HENRY J. FOWLER and another

*vs.*

WESTERN UNION TELEGRAPH COMPANY.

Cumberland.  Opinion June 6, 1888.

*Telegraphs.*  *Void contracts.*  *Non-delivery of message without fault of company.*  *Burden of proof.*

A stipulation or regulation of a telegraph company that it will receive

messages to be sent without repetition during the night for delivery not earlier than the morning of the next ensuing business day, at reduced rates, on condition " that the sender will agree that he will not claim damages for errors or delays, or for non-delivery of such messages, happening from any cause, beyond a sum equal to ten times the amount paid for transmission," although assented to by the sender, is unreasonable and void as against public policy.

Although telegraph companies are engaged in what may be appropriately termed a public employment, they are not common carriers in the strict sense of the term.

In the absence of any contract or regulation modifying their liability they do not insure absolutely the safe and accurate transmission of messages as against all contingencies.

The degree of care which they are bound to use is ordinary care, and that is to be measured with reference to the kind of business in which they are engaged.

They are bound to have suitable instruments and competent servants, and to see that the service is rendered with that degree of care and skill which the particular nature of the undertaking requires.

But this duty does not impose a liability upon them for want of skill or knowledge not reasonably attainable in the art, nor for errors or imperfections which arise from causes not within their control, or which are not capable of being successfully guarded against.

In an action against a telegraph company to recover damages for not delivering a message, the plaintiff makes out a *prima facie* case when he shows that the message which the company undertook to send was not delivered, and that damage has resulted.

The burden is then upon the company to show that the failure to deliver was caused by some agency for which it is not liable.

On report from superior court.

An action for damages for non-delivery of a night message. The facts are stated in the opinion.

*Woodman and Thompson*, for plaintiffs.

The first defence set up by the brief statement raises the old question of the power of a telegraph company to limit its liability by a printed contract contained in its printed blank which this court has long since considered and decided in the well known cases of *True* v. *The International Tel. Co.* 60 Maine, 9, and *Bartlett* v. *Western Union Tel. Co.* 62 Maine, 209.

The rule as laid down in the leading case of *Hadley* v. *Baxendale* and followed in this state (*Miller* v. *Mariners' Church*, 7 Gr. 51) is that, " In general the delinquent party is

holden to make good the loss occasioned by his delinquency, but his liability is limited to direct damages, which, according to the nature of the subject, may be contemplated or presumed to result from his failure. Remote or speculative damages, although susceptible of proof and deducible from the non-performance, are not allowed." This rule does not require that the parties should actually at the time of making the contract, have stopped to consider what the damages would be which would be likely to result from a breach, for in the language of EARL, C. J., in *Leonard* v. *N. Y. Tel. Co.* 41 N. Y. 544, "They very rarely contemplate any damage that would flow from any breach, and very frequently have not sufficient information to know what such damages would be." See, too, *W. U. Tel. Co.* v. *Bertram*, 12 Reporter, 798.

The profit that he would have received from the slaughter and sale of the car load of hogs (75 to 85 head), amounting to four dollars a head, as to this item of loss, that the plaintiff is entitled to recover, having specifically alleged it in his declaration, see *White* v. *Moseley*, 8 Pick. 356; *Hinckley* v. *Beckwith*, 13 Wis. 31; *Fletcher* v. *Tayleur*, 17 C. B. 21.

*Baker, Baker and Cornish*, for defendant.

Telegraph companies are not common carriers. *Breese* v. *U. S. Tel. Co.* 45 Barb. 274, affirmed in 48 N. Y. 132; *Ellis* v. *Am. Tel. Co.* 13 Allen, 226; *Redpath* v. *Wes. Un. Tel. Co.* 112 Mass. 71; *Grinnell* v. *Same*, 113 Mass. 299; *Birney* v. *Tel. Co.* 18 Md. 341; *Tyler* v. *Same*, 60 Ill. 421; *Tel. Co.* v. *Carew*, 15 Mich. 525; *Same* v. *Neill*, 57 Tex. 583; S. C. 44 Am. Rep. 589; *Same* v. *Blanchard*, 68 Ga. 209 (45 Am. R. 480); *Pinckney* v. *Tel. Co.* 19 S. C. 71; *MacAndrew* v. *Same*, 17 C. B. 3; *Bartlett* v. *Wes. Un. Tel. Co.* 62 Maine, 209.

They are only liable for want of due and ordinary care. *Leonard* v. *N. Y. &c. Tel. Co.* 41 N. Y. 571; *Ellis* v. *Am. Un. Tel. Co.* 13 Allen, 226; *Baldwin* v. *Tel. Co.* 45 N. Y. 74 (6 Am. R. 165); *Sweetland* v. *Tel. Co.* 27 Iowa, 433 (1 Am. R. 285); *Wes. Un. Tel. Co.* v. *Neill*, 57 Tex. 283 (44 Am. R. 589); *Tel. Co.* v. *Griswold*, 37 Ohio St. 301; *Breese*

v. *Tel. Co.* 48 N. Y. 132 ; *Tel. Co.* v. *Hobson,* 15 Gratt. 122 ; *Birney* v. *Tel. Co.* 18 Md. 341 ; *Tel. Co.* v. *Carew,* 15 Mich. 525 ; *Becker* v. *Tel. Co.* 11 Neb. 87 (38 Am. R. 356) ; *Tel. Co.* v. *Fontaine,* 58 Ga. 433 ; 2 Thompson, Neg. 836 ; *Graham* v. *Tel. Co.* 1 Col. 230 ; *White* v. *Same,* 14 Fed. Rep. 717 ; *Tel. Co.* v. *Dryburg,* 35 Pa. St. 298 ; *Bowen* v. *Tel. Co.* 1 Am. L. Reg. 685 ; *Stevenson* v. *Same,* 16 Up. Can. Q. B. 530 ; *De Rutte* v. *Same,* 1 Daly, 547 ; *Bartlett* v. *Wes. Un. Tel. Co. supra.*

Measure of damages. *Priestly* v. *R. R. Co.* 26 Ill. 205 ; *R. R. Co.* v. *Hale,* 83 Ill. 360 ; Gray, Com. by Tel. § 89 ; *Mackey* v. *Wes. Un. Tel. Co.* 16 Nev. 222 ; *Behm* v. *Same,* 8 Biss. 131 ; *Hadley* v. *Baxendale,* 9 Exch. 341 ; *Griffin* v. *Colver,* 16 N. Y. 490 ; *Squire* v. *Wes. Un. Tel. Co.* 98 Mass. 232 ; *Tel. Co.* v. *Graham,* 1 Col. 230 (9 Am. R. 136, note) ; *Lane* v. *Tel. Co.* 7 Up. Can. C. P. 23 ; *Hubbard* v. *Same,* 33 Wis. 558 (14 Am. R. 775) ; *True* v. *International Tel. Co.* 60 Maine, 9 ; *Cutting* v. *G. T. Ry. Co.* 13 Allen, 381 ; *Harvey* v. *C. & P. R. R. Co.* 124 Mass. 421 ; *Weston* v. *G. T. Ry. Co.* 54 Maine, 376 ; *Lord* v. *Midland Ry. Co.* L. R. 2 C. P. 339 ; *Horne* v. *Same,* L. R. 8 C. P. 131 ; *Gee* v. *Yorkshire Ry.* 6 H. & N. 211 ; *Borries* v. *Hutchinson,* 18 C. B. N. S. 445 ; *Wilson* v. *Newport Dock Co.* L. R. 1 Ex. 177 ; *B. C. S. Co.* v. *Nettleship,* L. R. 3 C. P. 499 ; *Cory* v. *Thames Co.* L. R. 3 Q. B. 181 ; *Cooper* v. *Young,* 22 Ga. 269 ; *Waite* v. *Gilbert,* 10 Cush. 177 ; *Ingledew* v. *Northern R. R.* 7 Gray, 91 ; *Woodger* v. *G. W. Ry. Co.* L. R. 2 C. P. 318.

FOSTER, J.   This case comes up on report.   It appears that on the evening of August 20, 1883, the plaintiffs, whose business is that of pork packing, delivered to the defendants' agent, at Portland, for transmission and delivery, the following night message :

"Portland, Aug. 20, 1883.

To H. F. Googins, Union Stock Yards, Ill.

Ship one car hogs to-morrow.

Thompson, Fowler & Co."

The message never having been delivered by the defendants, this action is brought to recover damages alleged to have been sustained in consequence.

In defence of the action the defendant introduced evidence and established the following facts :

At the Union Stock Yards, which are about six miles from Chicago, the defendant company had only a day office, open from half past six in the morning till ten o'clock in the evening. Night messages directed to the Stock Yards, received at the Chicago office during the night, were necessarily kept in that office until after the opening of the office at the Stock Yards on the following morning. This despatch was received at the Chicago office during the night of August 20–1, and the copy was hung upon what was called the Stock Yards' hook in the operating room, awaiting the opening of the office at that place on the morning of the 21st. About thirty minutes past six that morning, and immediately prior to the opening of the Stock Yards' office, a fire suddenly broke out in the operating room of the Chicago office, and spread with such rapidity that nothing could be saved from the room, and this copy, together with everything in the room, was destroyed.

The fire was first discovered in this room upon the back of the " switch board," where it is covered with numerous wires necessarily running very close to each other, and was caused by the crossing of several wires charged with large batteries. This crossing resulted from atmospheric conditions, the moisture accumulating on the back of the switch board forming a partial connection between the wires and acting as a partial conductor, thereby causing the electric current to leave its proper course with the result as above stated.

That such accidents are exceedingly rare is not disputed, and that there are no improvements known to the art or anywhere in use by which the possibility of such an occurrence can be prevented.

In consequence of this fire it became impossible for the defendant to deliver the plaintiffs' message.

This message delivered to the company was written upon a night message blank, and, after stipulating that the company would receive messages to be sent without repetition during the night, for delivery not earlier than the morning of the next ensuing business day, at reduced rates, there followed this condition : " that the sender will agree that he will not claim damages for errors or delays, or for non delivery of such messages, happening from any cause, beyond a sum equal to ten times the amount paid for transmission," etc.

Above the written message were these words : " Send the following night message, subject to the above conditions, which are hereby agreed to."

No evidence was offered at the trial or question raised in reference to the stipulations and condition, further than what appears upon the message blank signed at the bottom of the message. Nor is any question raised by counsel in argument before this court in relation to the validity of such a condition as is found attached to this stipulation or agreement. By its very terms, if held valid, this condition would relieve the company from all liability whatsoever for errors, delays or omissions " happening from any cause." It would protect them from all liability happening as the result of their own negligence. Whatever force or effect other courts may give to such conditions, whether as a regulation of the company or as a contract between the parties, it is now too well settled by this court to admit of question or contradiction, that they are unreasonable and void. *Bartlett* v. *W. U. Tel. Co.* 62 Maine, 209 ; *True* v. *The International Tel. Co.* 60 Maine, 9 ; *Ayer* v. *W. U. Tel. Co.* 79 Maine, 493. As in the case of common carriers, they cannot contract with their employers for exemption from liability for the consequences of their own negligence. Whether such conditions are reasonable or unreasonable must be determined with reference to public policy, rather than private contract. *Express Company* v. *Caldwell*, 21 Wall. 270.

The defence, however, is based entirely upon other grounds. No conditions contained in the stipulation are relied upon as a defence in this action. But it is claimed that under the facts in

the case, concerning which there is no controversy, the defendant company cannot be deemed guilty of any negligence, and therefore cannot be held to respond in damages. To ascertain the duties and liabilities of the defendant company we must look to the nature of the employment, and, except so far as it has limited its ordinary obligations by any special stipulation which may be held to be reasonable, be governed by the general and well established principles of law pertaining to such employment.

It is now perfectly well settled by the great weight of judicial authority, that although telegraph companies are engaged in what may appropriately be termed a public employment, and are therefore bound to transmit, for all persons, messages presented to them for that purpose, they are not common carriers in the strict sense of the term. To be sure, they are engaged in a business almost, if not quite, as important to the public as that of carriers. But while the analogy between the common carrier of goods and the common carrier of messages is very strong, nevertheless their responsibility differs in a manner corresponding to the difference in the nature of the services they perform. The common carrier of goods, in the absence of any special contract or regulation limiting its general liability, becomes an insurer of property entrusted to it for carriage. Whereas, in the absence of any contract or regulation modifying the liability of telegraph companies, they do not insure absolutely the safe and accurate transmission of messages as against all contingencies, but they are bound to transmit them with care and diligence adequate to the business which they undertake, and for any failure in such care and diligence they become responsible. This appears to be the doctrine now settled by the courts, and is founded upon reason. The following decisions in this country are authority, and may properly be cited in this connection. *Bartlett* v. *W. U. Tel. Co.* 62 Maine, 220–1; *Ayer* v. *Same*, 79 Maine, 493; *Ellis* v. *Am. Tel. Co.* 13 Allen, 232, which holds them to the use of due and reasonable care, and liable for the consequences of their negligence in the conduct of their business to those sustaining loss or damage thereby. *Breese* v. *U. S. Tel. Co.* 48 N. Y. 141; *Leonard* v.

*N. Y. Albany, &c. Tel. Co.* 41 N. Y. 571 ; *Baldwin* v. *U. S. Tel. Co.* 45 N. Y. 751 ; *Birney* v. *N. Y. & Wash. Tel. Co.* 1 Daly, 547 ; *N. Y. & Wash. Tel. Co.* v. *Dryburg*, 35 Pa. St. 298 ; *Graham* v. *W. U. Tel. Co.* 1 Colo. 230 ; *Sweetland* v. *Ill. &c. Tel. Co.* 27 Iowa, 433 ; *W. U. Tel. Co.* v. *Carew*, 15 Mich. 525 ; *W. U. Tel. Co.* v. *Neill*, 57 Texas, 283 ; *Wash. & N. O. Tel. Co.* v. *Hobson*, 15 Gratt. 122 ; *Pinckney* v. *Tel. Co.* 19 S. C. 71 ; *Smithson* v. *U. S. Tel. Co.* 29 Md. 167 ; *Little Rock, &c. Tel. Co.* 41 Ark.

A more stringent rule, however, was at first suggested in two early cases. The earliest one in which the question of the liability of telegraph companies arose was that of *MacAndrew* v. *Electric Tel. Co.* 17 C. B. (84 E. C. L. 3), decided in England in 1855. This case by implication only can be said to be authority for holding them to the liability of insurers. It was soon followed in this country by the case of *Parks* v. *Alta California Tel. Co.* 13 Cal. 422, decided in 1859, the only case to be found in which telegraph companies have been expressly held to be common carriers and subject to the same severe rule of responsibility. With this exception, all the American courts which have expressed any decided opinion upon this question have concurred in the doctrine above stated.

The degree of care which these companies are bound to use is to be measured with reference to the kind of business in which they are engaged. As compared with many other kinds of business the care required of them might be called " great care." While meaning really the same, it is variously stated by different courts in the decisions to which we have referred,—" due and reasonable care," " ordinary care and vigilance," " reasonable and proper care," " reasonable degree of care and diligence," " care and diligence adequate to the business which they undertake," " with skill, with care, and with attention," " a high degree of responsibility." These are but the varied forms of expressing the requirement of what is known in law as ordinary care, as applied to an employment of this nature, an employment which is not that of an ordinary bailee. The public, as a general rule, have no choice in the selection of the company. They have

none in the selection of its servants or agents. They have no control over the agencies or instrumentalities used in conducting the business of the company. The public must take the agencies which the companies furnish, and they have no supervision over its management or methods of performing the service which it holds itself out as willing and ready to perform. And while we do not hold that these companies are common carriers and subject to the same severe rule of responsibility, we think that those who engage in the business of thus serving the public by transmitting messages, should be held to a high degree of diligence, skill, and care, and should be responsible for any negligence or unfaithfulness in the performance of their duties.

A telegraph company which holds itself out to the public as ready to transmit all messages delivered to it, is bound to have suitable instruments and competent servants, and to see that the service is rendered with that degree of care and skill which the peculiar nature of the undertaking requires. We do not understand, however, that this duty would impose a liability upon the company for want of skill or knowledge not reasonably attainable in the art, nor for errors or imperfections which arise from causes not within its control, or which are not capable of being guarded against. *White* v. *W. U. Tel. Co.* 14 Fed. Rep. 710; *Sweetland* v. *Ill. & Miss. Tel. Co.* 27 Iowa, 433; *Leonard* v. *N. Y. &c. Tel. Co.* 41 N.Y. 572; *Ellis* v. *American Tel. Co.* 13 Allen, 233; *Bartlett* v. *W. U. Tel. Co.* 62 Maine, 221.

We think our own court has expressed the doctrine we are discussing in language so fitting that we may be justified in making the following extended quotation from the case last cited :

" To require a degree of care and skill commensurate with the importance of the trust reposed, is in accordance with the principles of law applicable to all undertakings of whatever kind, whether professional, mechanical, or that of the common laborer. There is no reason why the business of sending messages by telegraph should be made an exception to the general rule. This requires skill as well as care. If the work is difficult, greater skill is required. It is often necessary to entrust to this mode of communication matters of great moment, and therefore the

law requires great care.   It is necessary to use instruments of a somewhat delicate nature, and accurate adjustment, and therefore they must be so made as to be reasonably sufficient for the purpose.   The company holding itself out to the public as ready and willing to transmit messages by this means, pledges to that public the use of instruments proper for the purpose, and that degree of skill and care adequate to accomplish the object proposed.   In case of failure in any of these respects the company would undoubtedly be liable for the damage resulting.   This would not impose any liability for want of skill or knowledge not reasonably attainable in the present state of the art, nor for errors resulting from the peculiar and unknown condition of the atmosphere, or any agency from whatever source, which the degree of skill and care spoken of, is insufficient to guard against or avoid."

Taking the facts as proved in the case now under consideration, and applying the principles of law to them, are the plaintiffs entitled to recover?

They make out a *prima facie* case when they show that the message which the company undertook to send was not delivered and that damage has resulted.   It is not necessary that they show affirmatively that the failure to deliver happened through any omission of duty by the company or its officers, or from some defect in the instrumentalities employed by the company.   The failure to deliver being shown, the legal presumption is that it was caused by some one or the other of these causes, or of all combined.   It then becomes incumbent on the defendant, if it would relieve itself from the consequences of such presumption, to overcome that presumption by showing that in the attempted transmission and delivery of the message, it exercised all proper care and diligence commensurate with the undertaking, and that the failure is not attributable to any fault or negligence on its part. or that of any of its employees. *Bartlett* v. *W. U. Tel. Co.* 62 Maine, 221 ; *Baldwin* v. *U. S. Tel. Co.* 45 N. Y. 744 ; *W. U. Tel. Co.* v. *Graham*, 1 Col. 230 ; Shear. & Red. on Neg. § 559 ; *W. U. Tel. Co.* v. *Wenger*, 55 Pa. St. 262.

The case last named was where a message, sent by the plaintiff's line to New York, was transmitted only to Philadelphia, and no reason was assigned for the failure to transmit the message to its destination.    The court say : "No such reason as the law would recognize, and indeed no reason at all, was given for the failure to transmit the message to its destination.    Thus was presented a clear case of gross negligence against the company, in performing its undertaking, and a consequent liability to the plaintiff for such damage as he had sustained in consequence thereof."

The case at bar is unlike that.    While it is true that the message in this case was not transmitted to its destination, the defendant here has assumed the burden of proof, after the *prima facie* case of the plaintiffs, and by evidence which is uncontradicted has shown that the failure was caused by agencies over which it had no control, and for which it was not responsible. The despatch when received at the Chicago office during the night, was taken from the wire, and the relay copy was hung upon the Stock Yards' hook to be forwarded the following morning when the office at that place should open.    This is all that could be done that night.    By the terms of the company's stipulation or regulation to which the plaintiffs, by their signature thereto, either assented, or by which they must be held to be estopped, (*Breese* v. *U. S. Tel. Co.* 48 N. Y. 141–2 ; *Grinnell* v. *W. U. Tel. Co.* 113 Mass. 307) aside from the void condition of which we have spoken, the message was not to be delivered earlier than the morning of the next ensuing business day.    An earlier transmission in this case was impossible.    Immediately prior to the time for forwarding the message over the line communicating with the Stock Yards, a fire suddenly broke out in the operating room, and before anything could be rescued, the whole room was enveloped in flames and this message destroyed.

The origin of the fire, as we have stated and as the evidence shows, was due to atmospheric conditions and influences over which the defendant company had no control.    There were no improvements known or anywhere in use which could guard against the possibility of such an occurrence.    If the company

ought to have foreseen that such an accident might happen, or if such an occurrence could reasonably have been anticipated, and it could have been guarded against, then the omission to provide against it might be held to be actionable negligence. But the facts as they appear in the case rebut any negligence on this ground. That it was likely to occur was only a possibility. The fire does not appear to have originated through any fault or negligence of the company or its employees, or through any imperfection in the chemicals, metals, machinery or implements used by it, which, by any skill or knowledge reasonably attainable in the present state of telegraphy, could be guarded against.

The facts proved bring the case within the decisions to which we have referred in another part of this opinion, and upon those facts and the law it is the opinion of the court that the plaintiffs cannot prevail.

*Judgment for defendant.*

PETERS, C. J., WALTON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.