FLEISCHNER et al. v. PACIFIC POSTAL TELEGRAPH CABLE CO.

(Circuit Court, D. Oregon. December 21, 1893.)

1. TELEGRAPH COMPANIES—DELAY IN TRANSMISSION—LIABILITY.
   Upon presentation of a telegram, which the sender states to be important, and requests that it be sent immediately, it is the duty of the telegraph company, if its line is down, and it is not known how soon it may be restored, either to inform the sender of that fact, that he may transmit it over a competing line, which is equally available to him, or to itself cause the immediate transmission of the message over the competing line, and the failure of the operator to do so is not excused by the fact that he believed, or thought he had reason to believe, that the line would soon be in working order, the line having already been down for an hour, and the place or cause of the break not having been located.

2. SAME.
   A telegraph blank contained the usual statement that, to guard against mistakes or delays, the sender should cause the message to be repeated; that the company would not be liable for mistakes or delays in the transmission or delivery or for nondelivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; that it should not be liable therefor, in the case of any repeated message, beyond 50 times the sum received; and that it should not in any case be liable for delays arising from unavoidable interruption in the working of its lines. *Held*, that this stipulation did not protect the company against liability for damages which such repetition could have no tendency to prevent; and that, notwithstanding the stipulation, the company was liable for the failure of its operator to inform the sender of an important message that its line was down, or to send it by a competing line.

3. ATTACHMENT—FAILURE TO FILE INVENTORY—AMENDMENT.
   2 Hill's Code, Wash. § 308, requires the sheriff on attachment to make a full inventory of the attached property, and to return the same with his

writ. Section 322 declares that "no attachment shall be quashed or dismissed, or the property attached released, if the defect in any of the proceedings had been, or can be, amended, so as to show that a legal cause for the attachment existed at the time it was issued, and the court shall give the plaintiff a reasonable time to perfect such defective proceedings." The sheriff's return in attachment proceedings was not accompanied by an inventory of the attached property. *Held,* that subsequent attaching creditors were not entitled to priority over the defective attachment, their only remedy being to compel an amendment.

4. TELEGRAPH COMPANIES—DELAY—MEASURE OF DAMAGES.

A telegraphic message instructing the levying of an attachment was delayed in transit, and in consequence other creditors obtained priority over the sender's attachment. The debtor's property was not sufficient to pay the amount of the debt of the first attaching creditors, but would have been sufficient to satisfy the debt due to the sender of the telegram if his attachment had obtained priority. The telegraph company was informed by the terms of the message of the danger of loss to the sender, and was expressly requested to transmit the message immediately. *Held* that in an action against the telegraph company for damages, the measure of damages was the amount of the sender's debt.

At Law. Action by L. Fleischner and others, copartners of the firm of Fleischner, Mayer & Co., against the Pacific Postal Telegraph Cable Company, for damages for delay in transmitting a telegraphic message.

Joseph Simon and Joseph N. Teal, for plaintiffs.
Frederick V. Holman, for defendant.

GILBERT, Circuit Judge. On June 24, 1891, H. & B. Greenbaum, of Seattle, were sued, and their property attached, upon a debt of $16,000. At 9:15 o'clock on the following morning a member of the firm of Fleischner & Mayer, the plaintiffs herein, delivered at the office of the defendant at Portland a message, signed by the plaintiffs' attorneys, and addressed to Preston, Carr & Preston, attorneys, at Seattle, in the following words:

"H. B. Greenbaum owe Fleischner, Mayer & Co. $3,876.21. Reported closed by sheriff. Protect claim, and report at once.

"Cox, Teal & Minor."

The plaintiffs directed the attention of defendant's clerk to the word "rush" written on the message, stated that it was an important telegram, and requested that it be sent immediately. This the clerk promised to do. The plaintiffs then paid the regular tariff for transmission. At that time the defendant's wire to Seattle was down, and had been down since 8 o'clock. By an accident for which the defendant was in no way responsible, a tree had been felled across the wires. As yet neither the place of the obstruction nor its cause was known at the Portland office. The chief operator at Portland had been endeavoring since 8 o'clock to restore communication. He continued his efforts until the wire was repaired, which was some time after 12 o'clock. He testified that during all that time he believed the interruption was only temporary, and that the line would soon be in working order. The Western Union Telegraph Company had a line from Portland to Seattle, which during all that day was in operation, and ready to transmit messages between said points.

The plaintiffs' message, if sent either by the Western Union, or by the defendant at 9:15, or within a reasonable time thereafter. in the usual course of business, would have reached the attorneys at Seattle before 10 o'clock. If it had reached them then, or at any time before 11 o'clock, suit would have been brought upon plaintiffs' claim, and plaintiffs would have been the second attaching creditors, and their claim would have been paid in full. At 10 o'clock of that day a message was placed in the San Francisco office of the Western Union Telegraph Company, addressed to Preston, Carr & Preston, at Seattle, directing them to attach the property of H. & B. Greenbaum, upon claims amounting to $36,-000. This message, after being repeated at Portland in transit, was received by the attorneys at Seattle at 11 o'clock. Thereupon they sued, and attached and secured a second lien upon the property of said debtors for $36,000. The plaintiffs' message reached the attorneys at about 12:45, and plaintiffs' attachment was third in order. Upon sale of the attached property the plaintiffs realized nothing, and it appears that the judgment debtors have no property out of which the plaintiffs' claim can be paid.

The liability of telegraph companies for errors and delays in the transmission of messages has been the subject of numerous adjudications in the courts, and the decisions are not altogether harmonious. The weight of modern authority supports the rule that while telegraph companies are not to be held as common carriers, and therefore insurers of the safe and timely transmission of messages, yet that their obligations are to some extent analogous to those of common carriers, having their source in the public nature of the employment, the public rights conferred upon them, and the business and social necessity of the service rendered. They are therefore held to the exercise of care, the degree of which is variously expressed, but is generally declared to be in substance such care and caution as is reasonably within their power to employ. That rule has been adopted in this court in Abraham v. Telegraph Co., 23 Fed. Rep. 315, where Judge Deady held that a telegrapher is "bound to the exercise of care and diligence adequate to the discharge of the duties thereof, and cannot, by any notice, regulation, or contract, limit or control his liability for the negligence of himself or servants."

The interruption of defendant's line upon the morning of June 25th did not result from any negligence of the defendant or its servants. Its inability to transmit the plaintiffs' message resulted. from causes which the degree of skill and care the defendant was called upon to exercise could not have guarded against or avoided, and, if there had been no other line by which the message could have been sent, no legal liability could attach to the defendant for damages in this case. But the defendant's liability arises from the fact that there was a competing line to Seattle in good working order, equally accessible to plaintiffs, and by which their message could have been sent without delay. The defendant's duty under the circumstances was plain. Upon receipt of plaintiffs' message for transmission, it should have either informed plaintiffs

that its line was down, or it should have immediately forwarded the message by the other line. The defendant not only had the authority to transfer the message to the other company by the express terms of its printed blanks, but its regular usage had been so to do whenever its own lines were down. The fact that the chief operator in charge of defendant's Portland office believed, or thought he had reason to believe, that his line would soon be in working order, is no excuse. His communication with Seattle had been shut off for more than an hour. He had not yet ascertained the place or the cause of the obstruction. He had no right to expect its immediate removal. If the truth had been disclosed to plaintiffs, there can be no doubt but that they would have immediately taken the message to the other line. The defendant not only gave plaintiffs no opportunity to do this, but, on the other hand, knowing the importance of the message and of its immediate transmission, it not only failed to inform plaintiffs of its present inability to transmit, but gave plaintiffs the positive assurance that the message should be sent at once.

The terms of the contract under which the message was sent are relied upon by defendant to relieve it from liability for damages in this case. The blank upon which the message was written contained the following printed matter:

"To guard against mistakes or delays, the sender of this message should order it repeated—that is, telegraphed back to the originating office for comparison. For this one half the regular rate is charged in addition. It is agreed between the sender of the following message and this company that this company shall not be liable for mistakes or delays in the transmission or delivery or for nondelivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same, nor for mistakes or delays in the transmission or delivery or for nondelivery of any repeated message beyond 50 times the sum received for sending the same, unless specially insured, nor in any case for delays arising from unavoidable interruption of the working of its lines."

This stipulation is substantially that used by all telegraph companies. By its terms the telegraph company undertakes to discharge itself of all liability for mistakes and delays in the ordinary transmission and delivery of messages at the usual rates, unless the message be repeated at an increased cost, and in that case the liability for damages is limited to 50 times the cost of the message. No court has given effect to this stipulation according to its literal terms. Many decisions have gone to the extent of holding that such a stipulation excludes liability for all grades of negligence short of gross negligence or willful misconduct. But there are numerous precedents which hold, with better reason, that while a telegraph company may, by special agreement, or by reasonable rules and regulations printed upon its blanks, limit its liability for damages for errors and delays resulting from atmospheric changes or from disarrangement of its line or instruments, from causes which reasonable care would not avoid, it cannot stipulate for immunity from liability where the error or delay results from its own negligence; that such a stipulation would be contrary to the principles of a sound public policy, and therefore void. Tyler v.

Telegraph Co., 60 Ill. 421; Fowler v. Telegraph Co., 80 Me. 381, 15 Atl. Rep. 29; Telegraph Co. v. Short, 53 Ark. 434, 14 S. W. Rep. 649; Harkness v. Telegraph Co., 73 Iowa, 190, 34 N. W. Rep. 811; Telegraph Co. v. Griswold, 37 Ohio. St. 301.

But a stipulation for immunity from liability for error or delay in sending an unrepeated message could not, in any view of the case, be held to protect the company from damages for injuries which such repetition could have no tendency to prevent. The repetition of a message might prevent errors in its transmission, but it could have no tendency to prevent delay in transmitting or delay in delivering. If this particular message had been repeated back, it is not perceived how that additional precaution could in any degree have tended to prevent the injury which the plaintiffs sustained, or could have added in any way to the obligation which the defendant assumed when it received the message from plaintiffs and promised to forward the same immediately.

It is contended that the two prior attachments upon the property of H. & B. Greenbaum were void for the reason that the sheriff's return was unaccompanied by an inventory of the attached property, as required by law, and that therefore the plaintiffs cannot recover damages in this case. The statute of Washington (2 Hill's Code, § 308) requires the sheriff on attachment to make a full inventory of the attached property, and return the same with his writ. Section 322 makes liberal provision for amendment of attachment proceedings, as follows:

"No attachment shall be quashed or dismissed, or the property attached released, if the defect in any of the proceedings has been or can be amended, so as to show that a legal cause for the attachment existed at the time it was issued; and the court shall give the plaintiff a reasonable time to perfect such defective proceedings."

The suits at Seattle were all brought in the same court, and the writs were all levied by the same officer. Jurisdiction of the defendants in the suits was had by personal service. Legal cause for the attachments existed at the time the writs were issued. There was jurisdiction of the rem in the attachment proceedings by the legal issuance of the writ and the levy thereunder. The failure to file an inventory with the returns could not render the attachments void. The defect was clearly one which could have been cured by amendment. No way is suggested by which the plaintiffs, who were the attaching creditors third in order, could have taken advantage of these defects, or could have gained a priority over either of the attachments which were prior to them in point of time. The most they could have done would have been to compel an amendment of the prior attachment proceedings, to no advantage to themselves.

The plaintiffs are entitled to recover from the defendant the damages which are the natural and proximate result of the defendant's act, provided (1) that the damages are certain both as to their amount and the cause from which they proceed, and (2) that they were such as may fairly be supposed to have entered into the contemplation of the parties as the injury to result from a breach of

the contract. Griffin v. Colver, 16 N. Y. 489; Leonard v. Telegraph Co., 41 N. Y. 544; Abraham v. Telegraph Co., *supra.* The damages in this case are certain and fixed. They are the amount of the debt which the firm of H. & B. Greenbaum owes the plaintiffs. That amount was lost to the plaintiffs by the wrongful act of the defendant. The language of the message apprised the defendant of the amount of plaintiffs' claim, the danger of its loss, and the necessity for its prompt protection. These facts were further emphasized by the verbal statements of plaintiffs, and their stipulation that the message be forwarded at once, which stipulation was made before the message was left with defendant or paid for by plaintiffs, and became part of the contract.

Judgment will be rendered for plaintiffs for $3,707.37, with legal interest from June 25, 1891, and their costs and disbursements in this action.