# HUGH GILLIS *v.* WESTERN UNION TELEGRAPH COMPANY.

*Telegraph companies cannot stipulate against their negligence.*

1. The stipulation contained in the ordinary printed form of the Western Union Telegraph Company, that the company will not be liable in damages beyond the price of the message for any neglect in its transmission, unless the sender causes it to be repeated, is void in law, and such company will be liable for the negligence of itself or its agents notwithstanding.

2. The status of a telegraph company is the same as that of a common carrier of passengers for hire. It is bound to use due care in the business it undertakes for the public, and cannot restrict its liability for negligence therein.

This was an action on the case for the negligence of the defendant in the transmission of a telegraphic message. Plea, the general issue, and trial by court at the September Term, 1888, Veazey, J., presiding. The court found that the mistake was caused by want of due care on the part of the defendant's operators. The facts sufficiently appear in the opinion.

Judgment for the plaintiff. Exceptions by the defendant.

*Haskins & Stoddard,* for the defendant.

The plaintiff was bound by the written contract, although he did not read and had no knowledge of its provisions. *Grace* v. *Adams et al.,* 100 Mass. 505; *Redpath* v. *W. U. Tel. Co.,* 112 Mass. 71; *Grinnell* v. *W. U. Tel. Co.,* 113 Mass. 307; *Wolf* v. *W. U. Tel. Co.,* 62 Penn. 83; *W. U. Tel. Co.* v. *Carew,* 15 Mich. 525; *Breese* v. *U. S. Tel. Co.,* 48 N. Y. 132.

The stipulation limiting the damages recoverable for negligence in the transmission of unrepeated messages to the amount paid for sending the message was reasonable and should be enforced. *Grinnell* v. *W. U. Tel. Co.,* 113 Mass. 299; *Clement* v. *W. U. Tel. Co.,* 137 Mass. 462; *Wann* v. *W. U. Tel. Co.,* 37 Mo.432;

*Becker* v. *W. U. Tel. Co.*, 2 Neb. 87; *Breese* v. *U. S. Tel. Co.*, 48 N. Y. 132; *Wolf* v. *W. U. Tel. Co.*, 62 Penn. 83; *Camp* v. *W. U. Tel. Co.*, 1 Met. (Ky.) 164; *Passmore* v. *W. U. Tel. Co.*, 78 Penn., 238; *Daniel* v. *W. U. Tel. Co.*, 61 Tex. 452; *Young* v. *W. U. Tel. Co.*, 65 N. Y. 163; *W. U. Tel. Co.* v. *Buchanan*, 35 Ind. 429; *W. U. Tel. Co.* v. *Carew*, 15 Mich. 525; *Express Co.* v. *Caldwell*, 21 Wall. 264.

*Waterman, Martin & Hitt*, for the plaintiff.

The defendant was guilty of affirmative negligence in the transmission of the message; the plaintiff has been damaged by that negligence and should recover his damages. *W. U. Tel. Co.* v. *Hall*, 124 U. S. 479; *Turner* v. *Hawkeye Tel. Co.*, 41 Ia. 458; *Rittenhouse* v. *Ind. Line of Tel.*, 44 N. Y. 263; *Thompson* v. *W. U. Tel. Co.*, 64 Wis. 531; *Hibbard et al.* v. *W. U. Tel. Co.*, 33 Wis. 558; *Sweatland* v. *Ill. & Miss. R. R. Co.*, 27 Ia. 433; *Abraham et al.* v. *W. U. Tel. Co.*, 23 Fed. Rep. 315; *Bartlett* v. *W. U. Tel. Co.*, 62 Me. 209; *True* v. *Int. Tel. Co.*, 60 Me. 9; *Tel. Co.* v. *Griswold*, 37 Ohio, 301; *N. Y. & W. Tel. Co.* v. *Hall*, 124 U. S. 444; *Hyer* v. *W. U. Tel. Co.*, N. E. Rep. 784.

In this respect a telegraph company stands like a common carrier. Shearm. &. Redf. Neg. 634 *et seq.*; *Ullman & Co.* v. *W. U. Tel. Co.*, 60 Ill. 421; *W. U. Tel. Co.* v. *Tyler et al.*, 74 Ill. 168; *Parks* v. *Alta Cal. Tel. Co.*, 13 Cal. 422; *W. U. Tel. Co.* v. *Fenton*, 52 Ind. 1.

As a common carrier the defendant could not limit its liability for negligence; certainly not by a mere notice not called to the attention of the sender nor especially assented to by him. *Kimball* v. *R. & B. R. R. Co.*, 26 Vt. 427; *Blumenthal* v. *Brainerd et al.*, 38 Vt. 402; Redf. Rail. 132, n. 3; *King* v. *Woodbridge*, 34 Vt. 565; *Mann* v. *Birchard*, 40 Vt. 326; *Exp. Co.* v. *Caldwell*, 88 U. S. 556; Noy's Maxims, 110; 6 How. 344; *Grinnell* v. *W. U. Tel. Co.*, 113 Mass. 299; *Ellis* v. *Am. Tel. Co.*, 13 Allen, 226; *Redpath* v. *W. U. Tel. Co.*, 112 Mass. 71; *Duff* v. *Budd*, 3 Brod. & Bing. 177; *Briggs* v. *Taylor*, 28 Vt. 180; *Wilson* v. *Brett*, 11 M. & W. 113.

The opinion of the court was delivered by

ROWELL, J. The plaintiff, a peddler, telegraphed from Rochester, N. H., to the American Express Company's agent at Brattleboro, Vt., to "send my bale here." Through the want of due care in transmission, the letter "H" got changed to Y, so that when received at Brattleboro the message purported to come from Rochester, N. Y., and the bale was sent there, to the damage of the plaintiff. The message was unrepeated, and written on one of the company's blanks containing the usual condition as to unrepeated messages, namely, that the company should not be liable for mistakes in the transmission thereof, "whether happening by the negligence of its servants or otherwise, beyond the amount received for sending the same." The plaintiff did not read this condition nor know what it was, although he had sent and received a good many communications by telegraph.

Treating the condition as binding on the plaintiff if valid, although not brought home to his knowledge, as it was treated in argument, the question is whether it is valid or not.

It is very generally conceded that telegraph companies may limit their common-law liability by express contract, and also by rules and regulations when brought to the knowledge of their patrons and assented to by them. But as to the extent to which they may do this, and as to the reasonableness of the rules and stipulations by which they seek to do it, courts do not agree.

It seems to be a fundamental principle, running through all the cases, that rules and stipulations for immunity, in order to be valid, must be just and reasonable in the eye of the law, and not inconsistent with sound public policy. But the cases differ widely in the application of this principle, and largely, no doubt, because of the conflicting views as to the legal status of such companies.

A few of the earlier cases hold that they are common carriers, or if not strictly such, yet sufficiently so to make them amenable to the same law as common carriers. *Parks* v. *Alta Cal. Tel. Co.*, 13

Cal. 422 (s. c. Am. Dec. 589), is a leading case of this character. But this view has not obtained; and it is now generally held in this country that telegraph companies are not common carriers nor liable as such, but are liable only for failure to exercise due care, and the ground of this proposition is, that although telegraph companies, like common carriers, are in the exercise of a public calling, and consequently under obligation to serve all who choose to employ them within the scope of their business, yet, that the difference between the transmission of intelligence by means of electricity and the transportation of goods by any means is so great, that telegraph companies are not common carriers, and that the principle of public policy that imposes upon common carriers the exceptional liability of insurers, is not applicable to them. *Kelley* v. *W. U. Tel. Co.*, 109 N. Y. 231; *Grinnell* v. *W. U. Tel. Co.*, 113 Mass. 299; *Tyler* v. *W. U. Tel. Co.*, 60 Ill. 421; *Birney* v. *Printing Tel. Co.*, 18 Md. 341; s. c. 81 Am. Dec, 607, and cases *passim.*

A few cases assign telegraph companies to the category of bailees for hire; as, *Birney* v. *Printing Tel. Co.*, *supra*; *Pinckney* v. *W. U. Tel. Co.*, 19 S. C. 71; and some others. And the argument is, that as the ground of their liability is the same as that of bailees the legal status of the two must be the same. But this doctrine is justly criticized, because telegraph companies are engaged in a business of a public nature, and are precluded by rights and duties incident thereto from occupying the legal status of an ordinary bailee for hire, whose rights and duties arise wholly from the contract of employment. Gray's Com. by Tel. s. 10.

Although there may be no analogy between the business of telegraph companies and that of public carriers of passengers for hire, yet we regard their legal status as practically the same. Both are engaged in a business of a public nature; both must serve all who come; neither are insurers nor liable as such, but both are liable for negligence.

The question, then, is, whether it is just and reasonable in the eye of the law, and consistent with public policy, that tele-

graph companies should be allowed to stipulate for immunity from liability for their own and their servants' negligence.

The Supreme Court of the United States holds that common carriers cannot lawfully stipulate for exemption from liability when such exemption is not just and reasonable in the eye of the law; that it is not just and reasonable in the eye of the law for them to stipulate for exemption from liability for the negligence of themselves or their servants; and that these rules apply to carriers of goods and to carriers of passengers for hire, and with special force to the latter. *Railroad Co.* v. *Lockwood*, 17 Wall. 357. If, then, as we have said, the legal status of telegraph companies and of carriers of passengers for hire is practically the same, that case is strong authority against the validity of the stipulation under consideration. " Conceding," the court says, " that special contracts made by common carriers with their customers, limiting their liability, are good and valid as far as they are just and reasonable, to the extent, for example, of excusing them for all losses happening by accident, without negligence or fraud on their part; when they ask to go still further, and to be excused for negligence, an excuse so repugnant to the law of their foundation and to the public good, they have no longer any plea of justice or reason to support such a stipulation, but the contrary." This case agrees with the general rule on the subject.

While courts differ widely as to whether telegraph companies can lawfully stipulate to any extent against liability for negligence, none appear to have gone the length of holding that they can properly stipulate against liability for *gross negligence,* as they call it. But many of the cases hold that regulations like the one in question as to non-liability in respect of unrepeated messages, and similar regulations, are reasonable precautions for telegraph companies to take, and are binding upon all who assent to them, so as to exempt the company from liability beyond the amount stipulated for any cause except gross negligence or wilful misconduct on its part. Such a regulation, it is said, does not undertake wholly to exempt the company from liability for

(30)

loss, but merely requires the other party to the contract, if he considers the transmission and delivery of the message of such importance to him that he intends to hold the company reponsible in damages beyond the amount paid for the message for non-fulfilment of the contract on its part, to increase the payment by one-half, and that even common carriers have a right to inquire as to the quality and value of the goods and packages entrusted to them for carriage, and are not liable for goods of unusual value if false answers are made to their inquiries.

The cases of this class have been so often and so fully reviewed and the ground of them stated, that it is not necessary to review them here, nor to do more than refer to some of them. *Grinnell* v. *W. U. Tel. Co.*, 113 Mass. 299, is a leading case of this class, in which Mr. Chief Justice Gray reviews the cases to a considerable extent, and points out what is regarded as the fallacy of some of them. The following cases are also of this class : *Kelley* v. *W. U. Tel. Co.*, 109 N. Y. 231 ; *Wann* v. *W. U. Tel. Co.*, 37 Mo. 472 ; s. c. 90 Am. Dec. 395 ; *W. U. Tel. Co.* v. *Carew*, 15 Mich. 525 ; *Passmore* v. *W. U. Tel. Co.*, 78 Pa. St. 238 ; *W. U. Tel. Co.* v. *Buchanan*, 35 Ind. 429 ; *Lassiter* v. *Tel. Co.*, 89 N. C. 334.

In these cases gross negligence seems to be used to define a degree of carelessness greater than that involved in ordinary negligence, and one of which the law takes distinct cognizance as an independent ground of liability. It may well be doubted whether there is any difference in law between *negligence* and *gross negligence*. The tendency of judicial opinion is to deny it. But, however that may be, we are not prepared to follow this line of cases. As this is the first time this question has ever been before this court for decision, we are at liberty to adopt the view we regard as most just and reasonable and the most consistent with sound public policy ; and when we consider the relation of telegraph companies to the public, the character and extent of their business and the duties and obligations incident thereto, we see no sufficient reason for distinguishing between ordinary and gross negligence in this behalf, and think it most just and reasonable,

and most consistent with sound public policy, that they be not allowed to stipulate against liability for negligence of *any* kind, if there be more than one kind.

Telegraph companies do not deal with their employers on equal terms. There is a necessity for their employment. They are created to promote public convenience; and until the introduction of the telephone, they were, and practically still are, especially for considerable distances, without competition, save among themselves, in the transmission of intelligence by electricity. Their business has increased to vast proportions, and neither the commercial world nor the general public can dispense with their services. It is, therefore, just and reasonable that they should not be allowed to take advantage of their situation and of the necessities of the public, to exact exemption from that measure of duty that the law imposes upon them and that public policy demands.

A former eminent Chief Judge of this court, in his collection of American Railway Cases, says that "every attempt of carriers, by general notice or special contract, to excuse themselves from responsibility for losses or damage resulting in any degree from their own want of care or faithfulness, is against the good faith that the law requires as the basis of all contracts and employments, and therefore based upon principles and a policy that the law will not uphold." This doctrine is equally applicable to telegraph companies.

In the recent case of *Smith* v. *W. U. Tel. Co.*, 83 Ky. 104, s. c. 4 Am. St. Rep. 126, it is said that telegraph companies are public agents, engaged in a *quasi* public business; that care and fidelity are essential to their character as public servants, and that public policy forbids that they should abdicate as to the public by a contract with an individual, who is but one of millions, whose business will not, perhaps, admit either of delay or contest in the courts, but who is compelled to submit to any terms that the company may impose, and that the law should not uphold a contract by which public agents seek to shelter themselves from the consequences of their own wrong and neglect; that the liability of telegraph companies is not founded

wholly upon contract; that they are chartered for public purposes, extraordinary powers conferred upon them, the right of eminent domain given to them, and that if they did not serve the public they could not constitutionally string wires over a man's land without his consent, wherefore they are obliged to receive and transmit messages, and are liable for neglect without any express contract, and that if they rely upon a contract or a notice to restrict liability, it must be one not in violation of public policy; that in view of the vast interests committed to them, the extraordinary powers conferred upon them, and the virtual monopoly they enjoy, courts should compel them, *nolens volens*, to perform the corresponding duties of diligence and good faith to the public thereby created; that any other rule would defeat the very purpose for which the companies are chartered, namely, the accurate and speedy transmission of messages for the public; that while they may restrict their liability to a reasonable extent, they cannot to the extent of immunity from the consequences of their own negligence; that they must bring to the discharge of their duties that degree of care and skill that careful and prudent men exercise in like circumstances, and that any stipulation by which they undertake to relieve themselves from this duty or to restrict their liability for its non-performance, is forbidden by the demands of sound public policy; and that to hold otherwise would arm them with very dangerous power, and leave the public comparatively remediless. This reasoning is entirely satisfactory to us, and we adopt it as our own.

There are many other cases that hold the same way and upon substantially the same grounds, among which are the following: *True* v. *Int. Tel. Co.*, 60 Me. 1; *Ayer* v. *W. U. Tel. Co.*, 79 Me. 493; s. c. 1 Am. St. Rep. 353; *Fowler* v. *W. U. Tel. Co.*, 15 At. Rep. 29 (Me.); *Tel. Co.* v. *Griswold*, 37 Ohio St. 301; *Tyler* v. *W. U. Tel. Co.*, 60 Ill. 421; s. c. 74 Ill. 168; *Thompson* v. *W. U. Tel. Co.*, 64 Wis. 531; *Sweatland* v. *Ill. & Miss. Tel. Co.*, 27 Iowa, 433; *W. U. Tel. Co.* v. *Blanchard*, 68 Ga. 299; *Marr* v. *W. U. Tel. Co.* 85 Tenn. 529; *Wormack* v. *W. U. Tel. Co.*, 58 Texas, 176.

*Judgment affirmed.*