### SPRIGG'S ADMR. *v.* RUTLAND R. R. CO.

October Term, 1904.

Present:   ROWELL, C. J., TYLER, START, WATSON, and HASELTON, JJ.

Opinion filed March 9, 1905.

*Carriers—Contracts—Carrier's Stipulation Limiting its Common Law Liability—Stipulation by Carrier for Indemnity Against its own Negligence—Passengers for Hire—Caretakers of Cattle—"Union Live Stock Contract"—Construction.*

A common carrier cannot lawfully stipulate for exemption from liability unless such exemption is just and reasonable in the eye of the law.

It is against public policy for a common carrier to stipulate for indemnity against its own negligence in respect of its carriage of a passenger for hire.

A caretaker accompanying a shipment of cattle under a contract with the railroad company, based upon the same consideration as the contract of shipment, which showed that it was made in contemplation of the caretaker's contract, is a passenger for hire, towards whom the railroad company occupies the position of a common carrier.

A contract for the shipment of cattle in the company of a caretaker, exempting the carrier from liability in excess of an agreed valuation for damage to the cattle, whether caused by negligence or otherwise, and exempting it from any liability for injury to the caretaker, is divisible in its provisions as to the cattle and the caretaker, and, therefore, if one of these provisions is legal, it may be sustained, although the other is void as illegal.

A contract for the shipment of cattle, and a subsequent contract for the carriage of a caretaker to accompany the cattle, each of which is expressed to be in consideration of the carriage of the caretaker without further charge than the sum paid for the transportation of the cattle, and each of which shows that it was made in contemplation of the other, constitute but one contract supported by the same consideration.

CASE FOR NEGLIGENCE. Plea, the general issue. Heard on an agreed statement of facts at the June Term, 1904, Addison County, *Munson,* J., presiding. Judgment for the plaintiff. The defendant excepted. The opinion fully states the material facts.

*Frank L. Fish* and *H. Henry Powers* for the defendant.

It is now the established doctrine that a common carrier may by contract limit his common law liability. *McCawley* v. *The Furness Railway Co.,* 8 Law Rep. Q. B. Div. 57; *Bissell* v. *N. Y. C. R. Co.,* 25 N. Y. 442; *Poucher* v. *N. Y. C. R. R. Co.,* 49 N. Y. 263; *Call* v. *Texas & P. R. R.,* 194 U. S. 427; *Baltimore & O. R. R. Co.* v. *Voigt,* 176 U. S. 498; *N. P. R. R. Co.* v. *Adams,* 192 U. S. 440; *Duncan* v. *Maine Central R.,* 113 Fed. Rep. 503; *Quimby* v. *B. & M. R. R.* 150 Mass. 365; *Griswold* v. *N. Y. C. R. R. Co.,* 53 Conn. 371; *Gulf, C. etc., R. R.* v. *McGown,* 65 Tex. 640; *Rogers* v. *Kennebec Co.,* 86 Me. 261; *Kinney* v. *Central R. R.,* 34 N. J. Law 513; *Payne* v. *T. H. & I. R. R.,* 157 Ind. 616.

*Cushman & Russell* for the plaintiff.

The plaintiff's intestate was a passenger for hire. *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Carroll* v. *Missouri Pac. R. R.,* 88 Mo. 239; *Louisville, N. A. & Chi. R. R.* v. *Faylor,* 126 Ind. 126; *Doyle* v. *Fitchburg R. R.,* 166 Mass. 492; *Thorp* v. *Concord Railroad,* 61 Vt. 378; *Pennsylvania R. R.* v. *Henderson,* 51 Pa. St. 315; *Feldschneider* v. *Chi. M. & St. P. Ry.,* 99 N. W. 1034; *Ill. Cen. R. Co.* v. *Beebe,* 69 Ill. App. 363.

The stipulation on the part of the defendant for indemnity against its own negligence is against public policy and void. *Gillis* v. *Telegraph Co.,* 61 Vt. 461; *Railroad Co.* v. *Stevens,* 95 U. S. 655; *The Kensington,* 183 U. S. 263; *Davis & Gay* v. *Cen. Vt. R. Co.,* 66 Vt. 290; *Tarbell* v. *Rutland R. R.,* 73 Vt. 347; *Mann* v. *Birchard,* 40 Vt. 326; *Baltimore & O. R. Co.* v. *McLaughlin,* 73 Fed. 519; *Ill. Cen. R. Co.* v. *Anderson,* 56 N. E. 331; *Louisville & N. R. Co.* v. *Bell,* 38 S. W. 3; Elliott on *Railroads,* § 1605; 57 Cen. Law Journal, 83; Hutchinson on Carriers, § 555 B.

ROWELL, C. J. This is case for negligence as a common carrier. Parker procured a cattle car of the defendant, and shipped therein a load of cattle to Boston over defendant's road and connecting lines. At the time of the shipment, he and the defendant executed a duplicate "union live stock contract," which provided that the shipper or the consignee should pay freight at the rate of 21 cts. per 100 lbs., which was expressed to be the lower published tariff rate, based on the condition that the carrier assumed liability on the cattle only to the extent of a certain agreed valuation, on which was based the rate charged for the transportation, and beyond which the carrier should not be liable in any event for negligence nor otherwise. It also provided that the shipper should, at his own risk and expense, load the cattle, and feed and care for them in

transit; and should, in consideration of the premises, and of the carriage of a person in charge of the cattle on a freight train without charge other than the sum paid for transportation, indemnify and save harmless the carrier from liability of every kind by reason of personal injury sustained by such person, whether the same was caused by the negligence of the carrier or its employees or otherwise. And therein the shipper acknowledged that he had the option of shipping the cattle at a higher rate of freight according to the official tariffs, classifications, and rules of the carrier, and thereby receiving the security of the liability of the carrier and connecting lines as common carriers, but that he had voluntarily decided to ship under said contract at the reduced rate mentioned therein. Said higher rate was twenty per cent more than the rate charged under said contract, and the freight on the cattle at the rate charged was $42.00.

Sprigg, the intestate, was the caretaker of the cattle, and signed a contract printed on the same sheet of paper as the other contract, and immediately following it, entitled, "Contract with man or men in charge of live stock," whereby he assumed, in consideration of his carriage on the stock train mentioned in the other contract without charge other than the sum paid or to be paid for transporting the cattle,—all risk of accident or damage to his person; and released and discharged the carrier from all liability on account of personal injury sustained by him, whether caused by the negligence of the carriers, its employees, or otherwise.

By the rules and regulations of the defendant, the intestate could not have ridden on said stock train without signing, or otherwise assenting to, said last-mentioned contract; and there was no other consideration to support said contract except the one mentioned therein. The rate of freight paid

would have been the same in amount whether the cattle were accompanied by a caretaker or not.

While in the caboose of said stock train, which was the proper car for him to be in and ride in, the intestate, without fault on his part, received the injuries sued for, by reason of a rear-end collision caused by the actionable negligence of the defendant's servants.

The defendant contends that the case is governed by *Kimball* v. *The Rutland & Burlington R. R. Co.* 26 Vt. 247. There as here, the shipper had the option to pay more and hold the company to safe delivery; but chose to pay less, and take what he stipulated for, which was, the court said, the privilege of becoming his own carrier, thereby making the company a private carrier, and varying its obligation as a common carrier to such an extent that no recovery could be had under the declaration, which charged the company only as a common carrier.

But that case is no authority for the proposition here contended for, that a railroad company can justly stipulate for immunity against its own negligence as a carrier, for that question was not involved, as there was no such stipulation in the case, but directly the contrary was stipulated, namely, that the company would use all reasonable care and diligence in respect of the cattle shipped, injury to which was alone sued for. That stipulation was, that "at the rate charged as per tariff, no risk will be assumed by the corporation for any injury to live stock which they may do to each other or themselves, or any damage caused by breaking from the cars or otherwise; nor will they hold themselves liable for damage caused by accidental delays or weather; but the corporation will use all reasonable care and diligence." It is true that a ticket, called a free pass, was stipulated for to the caretaker, without assumption of risk by the corporation for his personal

safety; but, as we have seen, no question arose concerning that matter, for no personal injury to him was sued for.

The plaintiff contends that the intestate was a passenger for hire, and that the stipulation for immunity from negligent injury to him is against public policy and void.

The defendant contends that the nature of the contract determines the case; that if it be a tripartite agreement based on valuable consideration, the rights of all three of the parties are found therein; that it seems absurd to say that the contract is valid as to the transportation of the stock, but invalid as to the transportation of the man who cared for the stock; that is, that as to the stock, the rights of the parties are fixed by the contract, but as to the man, his rights are fixed by the common law; that it is more logical to say that the contract fixes the rights of all the parties who executed it; that if it be one contract and not two; if the intestate's contract binds the defendant through the shipper's contract; if the former is merely a specification as far as the defendant is concerned of its obligations assumed by the latter; if the former is based upon the same consideration as the latter, and merely carries its provisions into effect as far as the defendant is concerned,— then it is clear that the defendant should have the protection given it by the terms of both; that the intestate came into the shipper's contract for the purpose of carrying it into effect, in which he had no interest other than as representing the shipper and as his servant, and that he paid no consideration for his transportation, and if anybody did, it was the shipper or the consignee, and they paid nothing except the freight on the stock; that it is illogical to say that they paid 21 cents per 100 lbs. of the weight of the cattle, and that this included the caretaker; that it was not the payment of a gross sum of $42.00, as claimed by the plaintiff, but the payment of 21 cts. per hundred, which happened to amount to $42.00; that

the agreed statement shows that that price per hundred was paid whether a man went with the cattle or not, which shows that nothing additional was paid if one did go.

The defendant further contends that as the contract is not corruptive of public morals nor promotive of crime, it in no just sense concerns the public nor contravenes its policy, and therefore should be upheld; that the risks and perils of transportation may be bargained against with the utmost propriety; and that if the defendant could take out a policy to indemnify it against accident to the intestate, it could agree with him that he should insure himself.

As to the contract being good as to the cattle and bad as. to the man, that may well be; for the defendant does not stipulate for entire immunity from its own negligence as to the cattle, but only for immunity above the agreed valuation and above so much per carload in any event; and it has been held that such a contract is just and reasonable, because a proper and lawful way of securing a due proportion between the amount for which the carrier might be responsible and the compensation that he receives, and of protecting himself against extravagant or fanciful valuations, which is said to be quite different from exempting himself from all responsibility whatever for the negligence of himself and his servants. *Hart* v. *Pennsylvania R. R. Co.* 112 U. S. 331; *Liverpool Steam Co.* v. *Phoenix Ins. Co.* 129 U. S., at p. 442. But this principle cannot, from its very nature, apply to the man, as to whom the stipulation is for entire immunity; and as the promise, whether one or two, if not wholly legal, is divisible, the good may stand and the bad fall.

As to the nature of the contract, we think the caretaker's contract is supplemental to the shipper's contract, and substantially a part of the same transaction, though executed afterwards, and based upon the same consideration, as is shown by

its language, which is, that "in consideration of the carriage of the undersigned upon a freight train of the carrier or carriers named in the shipper's contract, without charge other than the sum paid or to be paid for the carriage upon said freight train of the live stock mentioned in said contract, of which live stock he is in charge,—the undersigned does hereby voluntarily assume," etc. Substantially the same language is used in the shipper's contract where, "in consideration of the premises, and of the carriage of a person or persons in charge of said stock upon a freight train of said carrier or its connecting carriers without charge other than the sum paid or to be paid for the transportation of the live stock in his or their charge,"—the shipper agrees to indemnify the carriers against liability for their negligent injury to the caretaker. This, taken with the fact that the shipper was to feed and care for the cattle while in transit, which necessitated the carriage of a man for that purpose on the same train; and with the further fact that the contract nowhere refers to the caretaker's transportation as a free passage,—shows that the parties understood in the time of it what their language fairly imports, that the carriage of the man was a part of the contract for the carriage of the cattle, and that the "sum paid" or to be paid for carrying the cattle, was a consideration for carrying the man as well; and having treated it so then, they are bound by it now.

As to the contract not being against public policy, while some courts say it is not, this Court has said it is. Thus, in *Gillis v. Western Union Telegraph Co.* 61 Vt. 461, 17 Atl. 736, the question was whether it was just and reasonable in the eye of the law, and consistent with public policy, that a telegraph company should be allowed to stipulate for immunity from liability for its own and its servants' negligence in sending messages for the plaintiff. The Court likened the legal status

of such a company to that of a common carrier of passengers
for hire, and held that it was not just and reasonable in the eye
of the law, and was against public policy, to allow such a
stipulation.    So in *Davis & Gray* v. *Central Vt. R. R. Co.*
66 Vt. 290, 29 Atl. 313, it is said that under our decisions a
common carrier may, by contract, limit his common law lia-
bility for goods entrusted to him, as far as it is just and rea-
sonable in the eye of the law; but that it is not just and rea-
sonable to allow such a servant of the public to contract for
relief against his own negligence.    In *Tarbell* v. *Rutland R.
R. Co.* 73 Vt. 347, 51 Atl. 6, it was held to be against public
policy for a railroad company to contract for immunity from
liability for injury to its employees by its own or its servants'
negligence.    We think this the better doctrine, speaking gen-
erally, for the employment of a common carrier is a public em-
ployment.    He must serve all who come.    The law holds him
to a very high degree of care and diligence; and when he
stipulates not to be bound by that degree, he seeks to throw
off the essential duties of his employment.    It is said some-
where that this law has its foundation deep in public policy;
that it is approved by experience, and sanctioned by the plain-
est principles of reason and justice; and that it is highly im-
portant that courts should not relax it.

As to the claim about insurance.    A carrier of goods may
get them insured against the usual risks; but that does not
lessen his responsibility to the shipper, but rather increases
his means of meeting that responsibility.    *Phoenix Ins. Co.* v.
*Erie Transportation Co.* 117 U. S., at p. 324.    So here, the
defendant's getting the intestate insured against accident,
would not be stipulating for indemnity against its own negli-
gence, but only for indemnity in case it was negligent; while
stipulating with him to insure himself, would be nothing more
than stipulating against its own negligence, which is quite a

different thing from the other. *Liverpool Steam Co.* v.
*Phoenix Ins. Co.* 129 U. S. pp. 442, 443.

The intestate, therefore, was a passenger for hire; for it
makes no difference that the consideration did not move from
him, for it inured to him as a consideration when he came into
the arrangement and contracted with the defendant on the
strength of it. And the defendant was a common carrier as to
the intestate, and not a private carrier, even under the Kimball
case, for here was no procurement of the use of a car for
carrying the man, as there was there for carrying the cattle,
which seems to be the ground on which the Court based its
idea of a private carrier. As to the soundness of the doctrine
that a common carrier can by contract become a private carrier
though his employment is not changed by the contract but
only his liability, we have no occasion to express an opinion.
That a common carrier can by contract limit his common law
liability to some extent, is true; but can he do it in the cir-
cumstances of this case, and to the extent here claimed? This
precise question has been answered in the negative by the
Supreme Court of the United States in *Railroad Company* v.
*Lockwood*, 17 Wall. 357. That was an action for damages for
an injury to the defendant in error while travelling on the com-
pany's stock train. The defendant was a drover, and had
cattle in the train. He was required to sign an agreement to
attend to loading, transporting, and unloading them, and to
take all risk of injury to them and of personal injury to him-
self or to whomsoever went with them. He received what was
called a drover's pass, which certified that he had shipped suffi-
cient cattle to pass free, but declared that the acceptance of
the pass was to be considered a waiver of all claims for dam-
ages or injuries received on the train. The agreement stated
its consideration to be the carrying of the cattle at less than

tariff rates. The defendant was injured in consequence of negligence on the part of the company or its servants.

The Court held that he was a passenger for hire; for though the pass certified that he was entitled to pass free, yet his passage was one of the mutual terms of the arrangement for carrying the cattle. It also held that a common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law; that it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants; and that these rules apply both to carriers of goods and carriers of passengers for hire, and with especial force to the latter. The Court purposely abstained from saying what the result would have been if the defendant had been a free passenger instead of a passenger for hire. But it is said that this case has been many times questioned, and that from the recent decisions of that Court it is clear that its views have undergone a change since then. A little examination will show how that is.

In *Railway Company* v. *Stevens,* 95 U. S. 655, the Court expressly based its decision on the *Lockwood* case, and said it had "no doubt of the correctness of the conclusion" there reached. In *Liverpool Steam Co.* v. *Phoenix Ins. Co.* 129 U. S. 397, 439-442, the Court analyzed the opinion in the *Lockwood* case, and said that it affirms and rests upon the doctrine that an express stipulation by a common carrier for hire, in a contract of carriage, that he shall be exempt from liability for losses caused by the negligence of himself or his servants, is unreasonable, contrary to public policy, and consequently void; and that such had always been the understanding of that Court, expressed in several later cases; and that the case then before it was substantially determined by the *Lockwood* case.

*The Baltimore & Ohio etc. R. R. Co.* v. *Voigt,* 176 U. S. 498, is relied upon by the defendant to show that the Federal Supreme Court has changed its views since the *Lockwood* case. That is an express-messenger case. But the Court distinguished it from the Lockwood case, which, it said had been frequently followed, and might be regarded as establishing a settled rule of policy; that the principles therein declared are salutary, and the Court had no disposition to depart from them. In *Northern Pacific R. R. Co.* v. *Adams,* 192 U. S. 440, the question was whether a railroad company is liable in damages to a person injured through the negligence of its employees, who knows that he is riding on a gratuitous pass given on condition that the company should not be liable for such injuries; and it was held that the company was not liable, the Court distinguishing the case from the Lockwood case the same as it distinguished the Voigt case. Again, in *Caw* v. *Texas Pacific R. R. Co.* 194 U. S. 427, the Lockwood case is referred to approvingly.

Thus it appears that the Lockwood case has not only not been questioned by the Court that decided it, but has been frequently approved and followed, and is still regarded by that Court as establishing a settled rule of policy, from which it has no disposition to depart. That many of the state courts hold a different doctrine is true, and those are the cases upon which the defendant mainly relies. But many of the state courts hold the same doctrine. And this Court is committed to that doctrine. In the Gillis case, 61 Vt. 461, 17 Atl. 736, the *Lockwood* case was referred to as strong authority for the case then in hand, and its doctrine was there approved and applied.

We do not consider whether this contract contravenes V. S. 3924, which penalizes negligent injuries by engineers, fire-

men, or other agents of a railroad, for the plaintiff does not make the question.

The result is, we hold that a common carrier cannot lawfully stipulate · for exemption· from liability when such exemption is not just and reasonable in the eye of the law; and that it is not just and reasonable in the eye of the law, as it is against public policy, for a common carrier of passengers for hire to stipulate for such exemption in respect of the carriage from the negligence of itself or its servants.

*Judgment affirmed.*