# Boston & Maine Railroad v. Howard Hardware Co.

[186 A.2d 184]

September Term, 1962

Present: **Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed November 7, 1962

*Black & Plante* (*Raffaele M. Terino* on the brief) for the plaintiff.

*Ryan, Smith & Carbine* for the defendant.

**Holden, J.** This action is in contract. The Boston & Maine Railroad relies on an indemnity clause in its spurtrack agreement with the defendant shipper, Howard Hardware Company, to recover the amount paid in settlement of a claim arising from a fatal accident which occurred on the defendant's siding September 17, 1955.

On that day death occurred to one of the plaintiff's employees, James Diggins, while he was performing his duties as yard brakeman at Bellows Falls, Vermont. The victim's body was wedged between a coal car and a building used and occupied by the defendant shipper located alongside the spurtrack.

The building involved was a shipping facility located on lands of the railroad. The plaintiff's interest in the premises was rented to the defendant by way of a written lease for an annual rental of five hundred dollars. A leasing arrangement had existed between these parties over a long period of time. A succession of leases had been

executed by the railroad and the defendant or its predecessors with attached blue prints to describe and designate the property leased. The several leases, including the present instrument of 1952, included the provision which gives rise to the present controversy. It is this clause upon which the plaintiff relies:

"8. No obstruction of any kind whatsoever shall be permitted within the distances shown by the lines of the Clearance Diagram upon this agreement without first obtaining the consent of the Chief Engineer of the Railroad and the Shipper shall at all times save harmless and indemnify the Railroad from and against all loss, cost, damage and expense which the Railroad may directly or indirectly suffer or be subject to caused wholly or in part or in any way referable to the existence of such obstruction, whether with or without the consent of the Chief Engineer."

The Clearance Diagram appears in the indented margin of the paragraph.

According to its terms, the lease agreement became effective on October 1, 1952 and continued from year to year down to the time of the accident, since it does not appear that either lessor or lessee exercised their respective rights to terminate. The instrument was signed on behalf of the defendant by its treasurer, Charles Ford.

The cause was tried by jury and resulted in a verdict and judgment for the defendant. The plaintiff appeals and assigns error in the trial court's denial of plaintiff's motion for a directed verdict and in the instructions upon which the case was submitted.

The plaintiff's position in this Court is at once challenged by the defendant on two critical points; first, that there is no evidence that the defendant's treasurer had authority to execute the lease agreement, and second, that the indemnification clause is contrary to public policy and unenforceable. These questions were properly saved by the defendant at the trial and are available to the defendant on appeal, under 12 V.S.A. §2382. If the points are well taken the judgment must be affirmed and the errors claimed by the railroad would be rendered harmless.

■ There was no formal documentation in the evidence of the authority of the shipper's treasurer to execute the lease and its indemnity agreement. And the burden of proving the treasurer's

authority was clearly on the plaintiff. *Hendrickson* v. *International Harvester Co.,* 100 Vt. 161, 166, 135 Atl. 702.

■ Although no express or specific authorization was shown, Ford's authority as treasurer to act in behalf of the defendant may be inferred. He discussed the matter with the president of his corporation and with some of the directors. The lease was not signed until after the treasurer had consulted with the company attorney. Of greater significance is the fact that the defendant used the leased premises and took advantage of the facilities it provided for nearly three years after it was given. This was substantial evidence of ratification of the treasurer's capacity to act in the matter. *Manchester Marble Co.* v. *Rutland Railroad Co.,* 100 Vt. 232, 242, 136 Atl. 394, 51 A.L.R. 628. In the light of these circumstances there was no failure of proof on the issue of the treasurer's authority to bind the defendant.

The contention that the agreement to indemnify is unenforceable is founded on the principle that a public service corporation cannot exempt itself from the consequences of its own negligence in the performance of its duties to the public. This general rule of law prevails in this jurisdiction. *Sprigg's Admr.* v. *Rutland Railroad Co.,* 77 Vt. 347, 354, 60 Atl. 143.

■ The common law rule against restricting liability to the public does not extend to private undertakings. The plaintiff owed no public duty to the defendant to permit it to use and occupy buildings located on railroad lands or right of way. The railroad had the right to grant or withhold this privilege on such terms and conditions as it deemed appropriate. In this the railroad was acting entirely in a private capacity, beyond the public concern. The public interest is not involved in agreements to indemnify for loss arising from the occupation of property on railroad lands. And the public is not concerned with which of the contracting parties shall suffer for the loss. *Osgood* v. *Central Vermont Railway Company,* 77 Vt. 334, 346, 60 Atl. 137, 70 L.R.A. 930; *Manchester Marble Co.* v. *Rutland Railroad Co.,* 100 Vt. 232, 237, 136 Atl. 394, 51 A.L.R. 628; see also annotation, 175 A.L.R. 94; *Booth-Kelly Lumber Co.* v. *Southern Pacific Company,* 183 F.2d 902, 20 A.L.R.2d 695, 708.

With the enforceability of the contract established, we turn to the facts of the accident which give rise to this controversy. The exact details of how the plaintiff's employee Diggins met his death apparently

were not observed. At least there was no eye witness to the event at the trial. He was engaged in spotting a coal car. The car had previously been located on the defendant's siding so that the pockets on the car could be emptied into a hopper at the defendant's coal shed. The car broke away and had to be re-coupled to the locomotive to be brought back in place. The coal car was being returned to the hopper when the accident occurred.

This particular switching operation was done by hand signal from Diggins to the fireman, who in turn relayed the signal to the locomotive engineer. When the coal car had nearly returned to the delivery point, Diggins was observed by the engineer to be "struggling with the wheel that sets the hand brake." He was standing on a platform that extends under the brake wheel with his head extending above the top of the car. He was at the south end of the car and in from the side of the building about three feet. When Diggins was observed in this position, the car was about a single car length away from the point where his body was found. The car had just started to move toward the coal hopper where it was to be spotted. The train was put in motion by the engineer on signal from the fireman.

When Diggins' body was found it was in an upright position, wedged between the building and the side of the car. He suffered a crushed chest and abdominal injuries. A post-mortem analysis of the victim's blood disclosed alcoholic content sufficient to impair the normal exercise of faculties and judgment.

At the time of his death the victim was forty-three years of age and had a life expectancy of nearly twenty-seven years. His previous annual earnings were in excess of five thousand dollars. He was survived by his widow and three minor children.

The railroad gave timely notice of the accident to the defendant and indicated its intention to look to the defendant for indemnity. The defendant disclaimed liability. Thereafter the railroad settled the claim for the death of its employee by payment of $29,000 to his estate.

On the strength of these facts the plaintiff requested the court to direct a verdict of the defendant's liability. In support of its motion, the railroad maintained there was no question for the jury under the contract of indemnity; that the undisputed evidence established that the defendant's building exceeded the clearance allowed in the agree-

ment and that the close clearance contributed to Diggins' death. The plaintiff further contended that under the Federal Employer's Liability Act it was bound to satisfy the claim of the decedent's estate by settlement or judgment. The railroad pointed out that the only issue for the jury to determine was the reasonableness of the settlement that was made.

On appeal, the plaintiff seeks to challenge the ruling of the trial court on the further ground that the record left no question for the jury on the issue of the defendant's ownership and control of the building that was involved in the accident. Although this point was not presented to the trial court, it deserves comment in view of the disposition of this appeal.

■ Both parties concede this was a critical issue. The sidetrack agreement and its accompanying blue print are equivocal on the point, and do not settle the question. Both sides presented extrinsic evidence in support of their respective claims about the matter, and the facts presented were subject to conflicting inferences. These considerations required the trial court to submit the issue to the jury for decision. *White* v. *Lumiere North American Co., Ltd.,* 79 Vt. 206, 222, 64 Atl. 1121, 6 L.R.A., N.S. 807; *Taplin & Rowell* v. *Marcy,* 81 Vt. 428, 452, 71 Atl. 72.

The question of whether the defendant's building was an obstruction within the limits prescribed in the clearance diagram that was incorporated into the contract was properly submitted. It is true that there was no dispute about the fact that the side of the car involved in the accident was 5.52 feet from the center of the track at one point and 5.67 feet from the center line at another point. And the distance between the car and the building at the place of the accident was less than one foot.

To determine whether the building exceeded the limits of the contract it became necessary to apply these measurements to the data specified on the clearance diagram. The schematic representation appearing on the margin of the contract is not entirely clear. It is composed of varying dimensions and is subject to various interpretations.

■■ In the first instance, and before extrinsic evidence was brought to bear on the question, the problem of the correct interpretation was for the court. *Brunelle* v. *Eastern Casualty Insurance Co.,*

108 Vt. 170, 172, 183 Atl. 493. However, more than the bare language of the contract and its accompanying sketch was presented to the court at the trial. Resort was had to the testimony of representatives of both plaintiff and the defendant in search of their particular interpretations of the clearance diagram. In view of the ambiguity of the contract and the parol evidence which developed in an effort to explain it, reasonable men might differ as to the true meaning of the instrument. Thus it was properly left to the jury to determine the meaning of the diagram and whether the defendant's building exceeded its restriction. 3 Williston, Contracts, §616 (Rev. Ed.).

■ There were other issues that required determination by the jury. While it is true that there was no dispute in the evidence concerning the circumstances that prevailed immediately preceding the accident, there was room for conflicting inferences as to how the accident actually came about. It does not appear how or why the victim moved from a position of relative safety where he was last seen into the peril which produced his death. The final inference had to be constructed from the circumstances. This was a question for the jury.

■ Circumstances which are undisputed often give rise to conflicting inferences of cause and effect. *Tracy* v. *Grand Trunk Rwy. Co.,* 76 Vt. 313, 325, 57 Atl. 104; *Smith* v. *Brasseur,* 119 Vt. 287, 291, 125 A.2d 815; *Schulz* v. *Pennsylvania Railroad Co.,* 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668, 671; Harper & James, The Law of Torts, §20.2, p. 1112. In this instance there was evidence from which the jury could infer a causal connection between the influence of alcohol on the judgment and physical faculties of the decedent and the accident. Upon such a finding the liability of the railroad under the Federal Employer's Liability Act (45 U.S.C.A. §§51 *et seq.*) would not be absolute. See *Davis* v. *Kennedy,* 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212, 216, and annotation; *St. Louis Southwestern Railway Co.* v. *Simpson,* 286 U.S. 346, 52 S.Ct. 520, 76 L.Ed. 1152, 1154; *Unadilla Valley Railway Company* v. *Caldine, Admr.,* 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224, 232 and annotation.

A further question for the jury was presented in connection with the settlement reached by the railroad with Diggins' administratrix. The defendant argues that this was a voluntary payment on the part

of the railroad, and not recoverable against the indemnitor for that reason.

▇▇▇▇▇ Ordinarily, to enforce the indemnity provisions against a shipper in spurtrack agreements like the one at hand it is necessary for the railroad to establish liability to the person injured. See annotation, 20 A.L.R.2d. 726. And a voluntary payment by an indemnitee without notice to the indemnitor may foreclose restitution. *Peerless Casualty Co.* v. *Cole,* 121 Vt. 258, 266, 155 A.2d 866.

In this instance, however, the railroad notified the defendant of the accident shortly after it happened. The defendant was then informed that the plaintiff regarded the defendant liable under the spurtrack agreement. The defendant denied any obligation to indemnify. Settlement was not made until the defendant had disclaimed liability.

▇▇▇▇ The defendant's denial of liability under the contract and its refusal to assume any responsibility for the workman's injury left the matter entirely to the railroad. At that time the plaintiff was entitled to proceed in good faith in an effort to accomplish a settlement without assuming the risk of forfeiture of its right to indemnity. By the same token, the payment of the claim did not of itself conclude the issue of liability. It was for the jury to determine whether the settlement was reasonable, prudent and reached in good faith. In deciding this issue the jury should have considered the likelihood of a recovery by the decedent's administratrix against the railroad and the reasonableness of the amount paid to compromise the claim. *Chicago Rock Island & Pacific Railroad Co.* v. *Dobry Flour Mills Inc.,* (1954 C.C.A. 10) 211 F.2d 785, 787, cert. den. 348 U.S. 832, 75 S.Ct. 54, 99 L.Ed. 656.

Each of these several issues was properly submitted to the jury. The plaintiff's motion for a directed verdict on the issue of liability was correctly overruled.

Upon the denial of this motion the plaintiff requested the trial court to withdraw the defense of waiver and estoppel from consideration of the jury. The request was denied and the issue was submitted in the court's instructions.

It was conceded that the coal shed where Diggins was killed had existed along the spurtrack over an extended period of time, during the period of earlier leases. Both parties knew of the inadequate

clearance and both parties were aware that railroad cars had struck against the side of the building on occasions in the past. The railroad had erected a warning sign to the effect that the building would not clear a man stationed on the side of a railroad car.

The defendant contended in its defense that the continued acquiescence on the part of the railroad in permitting inadequate clearance misled the defendant's officers, at the time of signing, into the belief that the obstruction was not within the indemnity provisions of the leasing agreement. The defendant contends that if the jury should find the defendant's representatives were in fact misled by the plaintiff's silent acquiescence, the defense of estoppel would preclude a recovery by the plaintiff.

Silence, alone, will not constitute a waiver of a right to work an estoppel against the owner of that right to prevent him from effectively asserting it. It is only where there is an obligation to speak, and the duty is not performed, that the defense of estoppel by silence is properly applied. *Dunbar* v. *Farnum,* 109 Vt. 313, 322, 196 Atl. 237, 114 A.L.R. 996. The failure to speak or disclose must be culpable. *Locklin* v. *Davis,* 71 Vt. 321, 322, 45 Atl. 224.

The defendant stands in the position of an insurer, with the plaintiff its insured. The renewal of the lease and side track agreement is analogous to the renewal of an indemnity policy. Neither duty nor blame would attach to the failure of the insured to affirm his reliance on a provision of the insuring agreement which was designed to protect him against a danger known to both parties. Thus in the case at hand, the very purpose of the indemnity agreement was to transfer the risk of liability from the lessor to the lessee, for accidents which might occur by reason of obstructions along the spurtrack. The contract itself confirms the plaintiff's reliance on the defendant's undertaking. No other or different assurance was called for.

The fundamental basis for estoppel in the law of contracts is the justification for the conduct of the party claiming it. 3 Williston, Contracts, §692 p. 1998 (Rev. Ed.). In the defendant's agreement to indemnify the plaintiff it is expressly stated that consent on the part of the railroad by its chief engineer to the construction of an obstruction within the prescribed clearance limits would not affect the shipper's undertaking. This provision, in itself, repels the idea of estoppel by consent, whether silent or otherwise. More important, it

establishes that the reliance of the defendant on the plaintiff's acquies-
cence was unwarranted. The defense of waiver and estoppel should
have been removed from the consideration of the jury by direction of
the court. There was error in submitting this issue to the jury.

The plaintiff took exception to the failure of the court to instruct
the jury that the defendant's treasurer, Mr. Ford, conceded in his
testimony that the building involved in the accident was owned by the
defendant. When this witness was first examined on this point by
counsel for the plaintiff, his testimony could be construed as an ad-
mission of the fact of his company's ownership. Later in the trial,
under questioning by the defendant's counsel, this witness expressly
sought to correct his earlier statements concerning ownership of the
building. This was permitted over objection by the plaintiff.

This course of the testimony of the witness was properly
within the discretion of the trial court. A witness always has the right
to correct or modify testimony previously given where truth and
accuracy require. *Ackerman* v. *Kogut,* 117 Vt. 40, 50, 84 A.2d 131.
When a witness makes two statements which are inconsistent, both
are for consideration. It was for the trier of the fact to say which
would be accepted as correct. *Piper* v. *Garland Motor Co.,* 94 Vt. 211,
214, 109 Atl. 911. The plaintiff's objection to this aspect of the in-
structions is without merit.

In pursuing this action the plaintiff relied entirely on paragraph
8 of the lease agreement which relates exclusively to obstructions and
clearances along the spur track. The complaint is framed accordingly.
The preceding paragraphs of the agreement provide:

"7. It is understood that the movement of railroad locomotives
involves some risk of fire, and the Shipper assumes all responsi-
bility for and agrees to indemnify the Railroad against loss or
damage to property of the Shipper or to property upon the
Shipper's premises, regardless of Railroad negligence, arising from
fire caused by locomotives operated by the Railroad on said side-
track, or in the vicinity for the purpose of serving said sidetrack,
except to the premises of the Railroad and to rolling stock belong-
ing to the Railroad or to others and to shipments in the course of
transportation.

The Shipper also agrees to indemnify and hold harmless the
Railroad for loss, damage or injury from any act or omission of

the Shipper, its employees or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said sidetrack and premises; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally."

In its instructions the court quoted the provisions of paragraph 7 and went on to charge the jury that if they should find that the death of the plaintiff's workman was produced by joint and concurring negligence of both parties the plaintiff's recovery should be divided in half. To this the plaintiff objected on the ground that the recovery claimed by the railroad under the obstruction clause has no relation to the damages referred to in the preceding paragraph 7.

■ The second section of provision 7 is general in its application. It was designed to cover accidents that might occur on the siding from unspecified causes where joint and concurring negligence of the railroad and the shipper might be involved. Paragraph 8 is specific and is confined to instances where liability arises from obstructions to passage along the railroad siding. It relates directly to accidents of the type that is involved in this controversy. Since it appears that the purpose of paragraph 8 was directed particularly to accidents produced by obstructions, it must prevail over the general terms of the preceding clause. *Deep Vein Coal Co.* v. *Chicago & E. I. Rwy. Co.,* 91 F.2d 963, 967, cert. den. 348 U.S. 329, 99 L.Ed. 656; *Booth-Kelly Lumber Co.* v. *Southern Pacific Company, supra,* 20 A.L.R.2d at 703; 17 C.J.S. Contracts, §313, p. 731; 12 Am. Jur. Contracts, §244, p. 779. It was error for the trial court to introduce the unrelated provisions of paragraph 7 into the case for consideration by the jury.

The defendant urges that this particular error was harmless since the instruction, if heeded, could only have the effect of cutting down the recovery by half and the error was cured by the verdict for the defendant. Perhaps the position of the defendant would be well taken if the trial was otherwise free from error. However, as we have seen, the defense of estoppel was erroneously submitted. That, in itself, requires a reversal. This, along with the other points considered in this opinion, may arise on retrial. For this reason, we feel called upon

to consider each of the errors assigned in more detail than otherwise might be necessary.

The remaining exceptions briefed by the plaintiff concern the instructions of the court in charging the jury. The separate consideration of these points is not required since they involve the same questions presented in the plaintiff's motion for a directed verdict.

*Judgment reversed and cause remanded.*

By agreement of counsel the Chief Justice participated in the consideration of the appeal although he was absent, due to illness, at the time of oral argument.