TAPLIN & ROWELL *v.* FRANK F. MARCY.

January Term, 1908.

Present: ROWELL, C. J., TYLER, and MUNSON, JJ., and WATERMAN, Superior J.

Opinion filed October 14, 1908.

*Principal and Agent—Evidence—Admissions of Agent—Competency—Evidence of Relationship—Questions for Jury—Documentary Evidence—Entries in Account Books—Admissibility of Exceptions in Another Case—Payment—By Notes of Debtor—Witnesses—Cross-Examinations—Scope—Trial—Instructions—Weight of Evidence—Assuming Facts.*

Where defendant received a deed of premises from another and a chattel mortgage on his stock of goods, which were delivered to defendant, together with the account books, and the books were left with defendant's lawyer who had been the mortgagor's attorney, a letter from defendant to the attorney stating that defendant had written the mortgagor that he did not think there was any objection to the mortgagor's examining the books, and

that he thought best to tell the mortgagor that defendant claimed anything that was due on the accounts, did not contain such a confidential statement as would render it a privileged communication between client and attorney, and it was admissible in an action for lumber and logs sold and delivered to defendant through the mortgagor as his agent, to show the relations between defendant and the mortgagor, and that defendant was claiming the books and what was due on them.

Where plaintiffs introduced in evidence a page of one of defendant's account books for the purpose of showing that the relation between defendant and another was that of principal and agent, and not debtor and creditor, it was not error to confine cross-examination to that issue, and to exclude cross-questions calling for explanation of items appearing under the heading.

Where plaintiffs claimed to have sold logs and lumber to defendant through a third person as defendant's agent, who later transferred his property to defendant, testimony of that third person that at the time of the transfer defendant promised him to pay plaintiffs for the logs and lumber in question was admissible, as tending to show the relation between the third person and defendant and as part of the transfer transaction, and as showing that defendant had assumed to pay the indebtedness in question.

To render the admissions or declarations of an agent admissible in evidence against his principal, they must have been made in the course of, and in reference to, a transaction by the agent within the scope of his authority as such.

In assumpsit for logs and lumber claimed to have been sold and delivered to defendant through a third person as his agent, the latter's testimony that he informed defendant's bookkeeper that defendant had agreed with the witness to pay his notes given to plaintiffs for the property in question was not admissible, where it appeared that the witness was then doing nothing in respect of which it was claimed he was acting as defendant's agent.

Where plaintiff's bookkeeper testified that she wrote the heading of the account with defendant in plaintiffs' account book, from her knowledge of the matter, and according to instructions from plaintiffs when she made the first entry thereunder, the heading was admissible in evidence for plaintiffs, in connection with the bookkeeper's testimony.

In assumpsit for logs and lumber claimed to have been sold and delivered to defendant through a third person as his agent, where

the issue was whether the third person was acting as defendant's agent or for himself, it was permissible for plaintiffs to show that certain conditional sale notes, specifying the logs and lumber in question and taken by plaintiffs from and in the name of the third person, were taken merely as security and to hold title to the property until it reached its destination, and not in payment thereof.

It was not error to exclude defendant's offered evidence of a part of the bill of exceptions in another case between the same parties, in which the question was the identity of the lumber covered by certain of said conditional sale notes, containing a statement written by the attorney of the plaintiffs herein that the uncontradicted evidence of said plaintiffs tended to show that they sold the lumber in question to said third person on condition that he give a lien note for it, and that title was not to pass until it was paid for, the evidence having been offered merely as a declaration by plaintiffs, and defendant's counsel, upon being asked by the court as to what it was a declaration of, did not answer.

The fact that payments made by said third person were indorsed on said conditional sale notes, which reserved to plaintiffs the title to the logs and lumber in question, was not conclusive as to the purpose for which the notes were given, but was merely evidence, to be considered in connection with other facts, as to whether the property was sold to said third person personally or as agent for defendant.

Though notes given by a debtor for the amount due from him on account are *prima facie* payment of the account, yet oral evidence is admissible to show the real purpose for which such notes were given.

In assumpsit for logs and lumber claimed to have been sold and delivered to defendant through a third person as his agent, whether certain conditional sales notes, covering the property in question and given to plaintiffs by the third person, were given by him personally or as defendant's agent, the purpose for which they were given, whether the account was merged in the notes, and the effect of indorsements therein, were questions for the jury.

In assumpsit for logs and lumber claimed to have been sold and delivered to defendant through L. as his agent, and where the issue was whether the sale was made to L. personally or as defendant's agent, and whether certain conditional sale notes covering the property in question and given to plaintiffs by L. in his

own name, were in his own behalf or for defendant, and it ap-
peared that plaintiff prior thereto had attempted to realize on
certain of the notes by duly selling lumber claimed to be covered
thereby, and had defended the levying officer in an action against
him by defendant, defendant's requested charges that, if plaintiffs
gave the notes to the officer with instructions to realize on the
lumber covered thereby, that was an admission by them that they
then understood and claimed that the notes represented a debt
from L. to them a part of which, at least, was then unpaid, that
this was a declaration by them that the sale was to L. personally
and not to defendant, and that, if plaintiffs defended the officer
in the suit, that was an admission that the notes represented a
debt due them from L., was properly refused, since they ignored
the other evidence as to the purpose of giving the notes and the
agency of L., and required the court to single out certain evidence
and charge as matter of law as to the weight to be given it.

It appearing that plaintiffs credited on defendant's account, when
received, payments made on the logs and lumber in question,
and after the commencement of this suit indorsed the payments
as of the date when received, on the conditional sale notes, de-
fendant's requested charges that the fact that plaintiffs caused
the payments to be so indorsed was evidence that plaintiffs had
not, before making the indorsements, made any other application
of the payments, that the making of the indorsements tended to
show that plaintiffs understood that the payments were not made
on account, and was an admission that the payments were not
made on account, were properly refused, as requiring the court to
disregard the other evidence and plaintiff's theory of the case,
and to declare the evidentiary force of the stated evidence as
matter of law.

In general assumpsit for logs and lumber sold and delivered, where
the issues were whether the sale was to defendant through his
alleged agent, or to the latter personally, whether certain condi-
tional sale notes covering the property and given in his own
name by the alleged agent to plaintiffs were merely for security
and not as payment, and whether the sale was for cash, condi-
tional sales notes to be given for what was not paid for on delivery,
plaintiffs to retain title until paid for, a charge that, though the
contract was made with defendant's agent acting as such, yet if
the contract was that the sale was to be, and in fact was, a cash
transaction, with conditional sale notes given for the property not

paid for on delivery, then plaintiffs cannot recover for the logs and lumber in this suit, was properly refused, as assuming that the contract was made with defendant's agent, and that the sale was for cash, etc.

Where the sale of logs and lumber is for cash on delivery, with conditional sale notes given for security for the part not so paid for, the notes so given are not payment, and the logs and lumber secured by such notes and not paid for on delivery is proper matter of charge on book account, and can be recovered for in general assumpsit.

Ordinarily, the construction of written correspondence is for the court; but where the question at issue turns on the proper conclusion to be drawn from a series of letters taken in connection with other facts and circumstances, the question is for the jury.

Where the question whether defendant authorized L. to purchase logs on his credit depended upon conclusions to be drawn from correspondence between them, their course of business with each other, including dealings under written contracts, and any oral agreements between them, and the manner of conducting business between L. and plaintiffs, who sold him the logs, it was error for the court to single out two letters from the correspondence between defendant and L., and, without submitting them, treat them as conclusive on the question as matter of law, but the letters, even if susceptible to the construction given by the court, should have been submitted, with proper instructions, as a piece of evidence to be considered by the jury, together with other facts and circumstances, in determining the question.

Where an agent's authority to purchase lumber on credit, if any was given, was by parol, and not mentioned in letters, and one portion of the charge erroneously instructed that the authority to purchase logs on credit was given by two letters, a further instruction making the question of authority to purchase lumber on credit depend on whether the jury found the authority was given to purchase lumber the same as logs, thus placing the authority to purchase lumber on the same grounds as that to purchase logs, was erroneous.

GENERAL ASSUMPSIT in the common money counts for logs and lumber sold and delivered. Pleas, the general issue with notice, and payment. Trial by jury at the March Term, 1906,

Orleans County, *Watson*, J., presiding.   Only special verdicts; judgment thereon for the plaintiffs.   The defendant excepted.

At the close of all the evidence the defendant moved for a directed verdict in his favor on the following grounds:—

"First.   The only count in plaintiffs' declaration on which they can stand in this case is the count for goods, wares, and merchandise sold and delivered; and the uncontradicted evidence of the plaintiff Taplin is that the contract between him and Lang was that the plaintiffs were to have cash or lien notes for all the logs or lumber as the same were counted off the cars into the mill-yard of R. B. Lang; that plaintiffs in fact had either cash or lien notes for all of said lumber or logs as the same were counted off the cars into said mill-yard; that plaintiffs were not to part with their title to said logs or lumber until they had received their full pay for same; and that all the logs and lumber sued for in this case were sold and delivered in accordance with said contract, and that plaintiffs have received either cash or lien notes for all the logs or lumber sued for at the time the same were counted off the cars into the Lang mill-yard.   It therefore follows that the entire debt of plaintiffs is evidenced by, and is merged into, said lien notes; and plaintiffs affirmatively disclaim to recover on said lien notes in this case, and claim to recover only on an alleged 'account' for said logs and lumber, which account, in fact, never existed.

Second.   Even if all the talk between R. B. Lang and plaintiffs in respect of the sale of logs or lumber took place just as plaintiffs' evidence tends to show, and even if in all said talk Lang was the authorized agent of the defendant, having the power to bind the defendant in respect of the sale of said logs or lumber, still the lien notes which were executed by R. B. Lang for the very debt for which defendant is sued in this case, and for the purchase price of the identical logs and lumber for which defendant is sought to be charged, merged, or rather took the place of, all such talk had between Lang and plaintiffs previous to their execution; and said lien notes determine that the logs or lumber therein specified were sold to R. B. Lang, and not to this defendant.   Especially is this true when it is remembered that plaintiffs have sued defendant in trover, which action is based upon these lien notes; that they have placed two of said lien notes in the hands of an officer with instructions to realize

upon the hardwood plank therein mentioned; that they defended the suit of *Marcy* v. *Parker* upon the theory that said two lien notes were valid lien notes against said Lang; and that they have indorsed all the money paid by said Lang on account of the logs or lumber specified in said notes, upon said notes.'' Motion overruled, to which the defendant excepted.

It appeared that R. B. Lang gave the plaintiffs seven lien notes in sums aggregating substantially the amount of the plaintiffs' specifications, and together covering the same items of logs and lumber claimed by the plaintiffs in their specifications. Each note was signed by R. B. Lang, payable to the plaintiffs, or order, in one day from date, and each was filed for record in the office of the town clerk of Barton, where the plaintiffs and said Lang resided, within thirty days of its date, except one which was never so filed. Each note, after reciting the logs and lumber for which it was given, continued, ''this day conditionally sold and delivered by said Taplin & Rowell to R. B. Lang, which is to be and remain the property of the said Taplin & Rowell, * * * * subject to their control and right to immediate possession, until said note with interest is fully paid.''

Said notes were introduced in evidence by the plaintiffs on the following offer, and not otherwise. ''Not as evidence, or as any cause of action, or as anything we rely upon as a basis of recovery, but simply to show the method of doing business, in so far as the notes show it, and also for the purpose of showing the indorsements that now appear on them.''

Said notes were offered and received in evidence on behalf of the defendant ''for the purpose of rebutting the case made by the plaintiffs in their opening and for no other purpose.''

*J. W. Redmond* for the defendant.

For the reasons therein stated, it was error to deny defendant's motion for a directed verdict. In *Ins. Co.* v. *Lawrence,* 14 Johns. 55, Chancellor Kent says:—''The principle of law is that if a man has an election to do or demand one of two things, and he determines his election, it shall be determined forever.''

''If one wrongfully takes and sells personal property not belonging to him, the owner has the election to sue him for the

proceeds as money had and received to and for his use, and thus ratify the sale; or he may pursue the property and recover it, or its value. But he cannot do both, and he is bound by his election." Pomeroy, Remedies, Sec. 567, et seq. *Morris* v. *Rexford*, 18 N. Y. 552; *Conrow* v. *Little*, 115 N. Y. 387; *Equitable etc. Co.* v. *Hersee*, 103 N. Y. 26; *Hayes* v. *Midas*, 104 N. Y. 602.

It should be remembered that this is not the case of an agent dealing in his own name, but in fact for an undisclosed principal.

In the view of the other evidence in the case on that subject, it was error to instruct the jury as matter of law that defendant's two letters to Lang authorized him to purchase logs on defendant's credit. Those letters should have been submitted to the jury in connection with the other evidence in the case on that question. *Rankin* v. *Fid. Ins. Co.*, 189 U. S. 242, 47 L. ed. 792; *West* v. *Smith*, 101 U. S. 263, 25 L. ed. 809; *White* v. *Lumiere etc. Co.*, 79 Vt. 222.

It was error to allow Lang to testify that he told plaintiffs' bookkeeper that defendant had agreed to pay the plaintiffs' claim. That was an agreement, if ever made, between Lang and the defendant, of which plaintiffs could have no advantage. *Crampton* v. *Ballard*, 10 Vt. 251; *Phelps, Dodge & Co.* v. *Conant*, 30 Vt. 277; *Hall* v. *Huntoon*, 17 Vt. 244; *Fugure* v. *Society*, 46 Vt. 362; and it is not claimed that Lang was acting as defendant's agent in making this declaration.

It was error to allow one of the plaintiffs to state his purpose in taking the lien notes. An uncommunicated purpose, or any other uncommunicated state of mind, can form no part of, or in any way affect, a contract. Holmes, Common Law, 309; *Browne* v. *Hickle*, 68 Ia. 330, 27 N. W. 276; *Columbus* v. *Dahn*, 36 Ind. 334; *Donovan* v. *Driscoe*, 116 Ia. 339, 90 N. W. 60.

*Young & Young* for the plaintiffs.

The letter to Aldrich was properly received. It was not a privileged communication between client and attorney, as claimed. 4 Wig. Ev. §§2310, 2311, p. 3232; *Wetherbee* v. *Ezekiel*, 25 Vt. 47; *Earl* v. *Grout*, 46 Vt. 113; *Childs* v. *Merrill*, 66 Vt. 302; *Coon* v. *Swan*, 30 Vt. 6.

Plaintiff was properly allowed to state his purpose in taking the lien notes. *Follett* v. *Steel,* 16 Vt. 30; *Dickinson* v. *King,* 28 Vt. 378; *Street* v. *Hall,* 29 Vt. 165.

WATERMAN, Superior J. This is an action of general assumpsit for logs and lumber sold and delivered. Plea, general issue with notice and payment. The notice is to the effect that a suit now pending in favor of the same plaintiffs against the same defendant is for the same cause of action.

Plaintiffs claimed that defendant purchased the logs and lumber mentioned in their specifications, through one Lang as his agent, duly authorized by the defendant to make such purchases. Defendant claimed that his relation to Lang was only that of a commission merchant, selling the product of Lang's mill, taking security on the lumber for advancements of cash and commissions, and that he never authorized Lang to pledge his credit for logs or lumber; and that Lang was only authorized to act as his agent in making cash purchases of logs or lumber. The defendant claimed that the evidence in the case tended only to show that the logs and lumber in question were sold by the plaintiffs to Lang, individually, and not to the defendant through him as agent, and that no credit was ever extended by the plaintiffs to either Lang or the defendant for the same; that the sale was a cash transaction, or lien notes to be given on such part as was not paid for on delivery, and that the business between Lang and the plaintiffs was transacted in accordance with that understanding, which existed between Lang and the defendant. The defendant lived at Palmer, Massachusetts; the plaintiffs lived and were doing business at Barton, Vermont, and Lang at South Barton, during the time covered by these transactions. There was no claim or evidence that the defendant had ever personally promised the plaintiffs, or their agent, to pay for the logs or lumber in question, or that he ever became obligated to pay for the same, except through Lang as his agent, unless the fact that he had substantially all the lumber sent to him, or his order, and the proceeds of all the lumber sold in his name, has a tendency to establish that fact. The plaintiffs never presented a bill or statement of their account to the defendant, but they called on Lang from time to time for payments on their account, claiming he was defendant's agent, and Lang assured them when

they called on him for payments, that the defendant would come up soon and settle the account.

April 7, 1902, the defendant and Lang entered into a written agreement, by which Lang agreed to ship to the order of the defendant all the lumber cut out of that season's stock of logs, and all the logs in and about Lang's mill, and the defendant agreed to market said lumber, upon commission, and account to Lang for the net proceeds, and apply the same in payment of advancements with interest thereon, to advance Lang $4,500 for one Lawrence's interest in Lang's logs and lumber, and to advance Lang $140 per week, for twelve weeks. Lawrence then held a lease of Lang's mill and premises at South Barton, and was to assign the lease to the defendant. On the same day and as a part of the transaction Lang gave the defendant a chattel mortgage of all his logs and lumber at or near his mill, to secure the defendant for the money he had advanced or was to advance to Lang. April 15, 1902, Lawrence assigned his lease to the defendant, upon being paid the amount due him, for money he had paid toward the logs. September 30, 1902, defendant and Lang made another written agreement similar to the one of April 7th, but covering the logs to be got out in the coming season, and providing that the logs and lumber should be and remain the property of the defendant until he should be fully paid for all money advanced by him. December 3, 1903, Lang gave the defendant a quit-claim deed of his mill and premises at South Barton and a chattel mortgage of all the goods in his store. December 17, 1903, Lang turned over to the defendant the stock of goods he had at South Barton. Defendant took possession of the property deeded and turned over to him in December, and also took possession of the books of account which Lang had kept in his business, which were placed in the office of W. R. Aldrich of Barton.

January 2, 1904, the defendant wrote a letter to Mr. Aldrich, enclosing a letter from Lang, and stating in substance that he had written Lang that he did not think there would be any objection to his going to Mr. Aldrich's office and looking at the books, if for any reason he desired to look at them, and that he thought it best to tell Lang if there was anything due from any of the accounts on the books, that defendant claimed the amounts due. Plaintiffs offered this letter in evidence, and

it was received subject to defendant's objection and exception. It was offered as showing that defendant claimed the books of Lang that were then in the custody of Mr. Aldrich, and whatever was due upon them. It was objected to on the ground that it was a privileged communication, Aldrich being an attorney at law, and the retained counsel of the defendant, and that said letter was written to him by the defendant as his counsel, who then had the books in his possession. The contents of the letter do not show any confidential statement. It shows to some extent the relations then existing between him and Lang, and that he was claiming the books and what there was due upon them. Before the letter was admitted Lang testified that Aldrich was his counsel when the books were left with him, and afterward refused to allow him to take possession of them. The exceptions show nothing further as to the relations between Aldrich and the defendant as counsel and client. We do not think this letter in the circumstances was a privileged communication, and it was admissible.

While defendant's bookkeeper was on the stand as a witness, testifying as to the defendant's books of account, showing his deal with Lang, the plaintiff offered in evidence the heading of a certain page of an account book as showing the way the account was headed and the manner of making entries, on the ground that the book did not show a debt and credit account, but was headed "Statement of R. B. Lang given July 1, 1903." Counsel for defendant stated he had no objection, and wanted it in the case. Plaintiffs' counsel expressly limited his offer to the purpose above stated, and it was admitted by the court for the purpose named. After the admission of the heading for that purpose counsel for defendant cross-examined the witness, and called his attention to a certain item in the statement, and asked him whether that item appeared in any manner on the book from which he made the copy of the statement, to which the witness answered in the negative, and then asked him, "Where did you get that item on this statement?" Without objection by counsel for plaintiffs the court said, "That item is excluded for the present, it is not cross-examination," to which ruling the defendant asked, and was allowed, an exception. The admission of the heading having been limited to one purpose, that of showing the manner of keeping the accounts by the defendant,

particularly as to the heading and not for the purpose of showing the amount due, or the correctness, or incorrectness of the book, as to the items appearing upon it, the questions asked the witness were not relevant to the heading, or the manner of keeping the accounts with Lang by the defendant and were not proper cross-examination. One of the questions arising in the suit was as to the relations between Lang and the defendant. The plaintiff claimed that Lang was acting as defendant's agent, and that this manner of keeping the accounts between them, by the defendant, indicated that the relation of agency, and not that of debtor and creditor existed. The sole object of the testimony admitted was to show this fact, and the cross-examination was properly confined to that. There was no error in this ruling of the court.

When Lang was on the stand as a witness for plaintiffs, he was asked in his direct examination what took place between him and the defendant at the time he transferred the mill property to the defendant, with relation to the plaintiffs' account then due, and answered that the defendant agreed to take care of the lien notes previously given by Lang to them, secured upon the lumber, and was also asked what took place between him and defendant December 17, 1903, when he transferred his stock of goods in the store to defendant, and he answered in substance that defendant agreed the same with reference to the lien notes that he did December 3 and 4 with reference to the account, to take care of the Taplin & Rowell lien notes, and it appearing that Lang then told the defendant that the balance due Taplin and Rowell was about $1,540. He was asked whether defendant then agreed to pay that amount if it was found to be correct, and he answered that he did, and upon the witness stating that upon two occasions in December he had turned over to the defendant every dollar of his property, he was allowed to state that in consideration of his turning over to him all his property, the defendant said he would pay the debt due the plaintiffs for lumber which Lang had bought of them, as they claimed for the defendant. All this testimony was received subject to objection and exception. The objection was that it was immaterial. It was material as showing the relations between Lang and the defendant. It had a tendency to show that defendant was then assuming the indebtedness contracted by Lang to the plaintiffs,

and in connection with the other testimony that Lang had been his agent in doing the business; that the balance due, on the account for lumber, belonged to him to pay, and that through Lang the plaintiffs had made a sale of the property to him. The evidence did not show that the defendant agreed to pay the plaintiffs out of the property turned over to him by Lang, but if it did not, his agreement to take care of plaintiffs' debt for lumber might indicate the relations he sustained to them, as well as to Lang. It was a part of the transaction of Lang's turning over his property to the defendant, and the understanding between them, to this extent as to what Lang had been doing, in the purchase of lumber, with which the defendant had been connected in some way. Considered as that testimony left the matter, and without further explanation it tended to characterize the relations between all three of the parties.

In the same examination of Lang he testified that he had a looking over with the bookkeeper of plaintiffs at some time between December 3 and 17, 1903, and was then allowed to testify subject to defendant's objection and exception, that he informed her of what the defendant had agreed to do in regard to the payment of the Lang notes. The defendant testified that he never agreed to pay the debt to the plaintiffs, but admitted that he drew a check for $526.48 December 3, 1903, the amount which Lang then said defendant owed the plaintiffs. It was objected by defendant that the evidence did not tend to show that he ever instructed Lang to communicate to anyone the alleged agreement on defendant's part to pay the Lang notes.

When this conversation between Lang and plaintiff's bookkeeper took place, nothing was being done in carrying on any of the business in which it was claimed he had been acting for the defendant. The exceptions state he was looking over with the bookkeeper but it does not appear that his statement had any connection with that. It was a statement of an agreement of the defendant, previously made, to pay the plaintiff. While Lang's testimony as to this agreement, made while the transaction between him and the defendant was going on, and relating to that transaction, was admissible, upon the grounds previously stated, his relation to the bookkeeper of what the defendant had said, was merely a recital of a past conversation, and in no way connected with any business or transaction then being carried

on.  It is not shown that Lang was authorized by the defendant to make such a statement, and the scope of his claimed agency was not broad enough to include such authority.  The general principle governing the admissibility of testimony as to statements or admissions of an agent is, that they must have been made while the agent was performing some act which was within the scope of his authority, and with reference to the act which was being done.  Green. Ev. Sec. 113, *Stiles* v. *Danville,* 42 Vt. 282; *Mason* v. *Gray,* 36 Vt. 308; *Hardwick Savings Bank* v. *Drenan,* 72 Vt. 438, 48 Atl. 645.  Lang's statement to the bookkeeper, of what the defendant had previously said was no part of the *res gestae,* but was, rather, *res inter alios,* and the admission of his testimony showing such statement was error.  Plaintiffs offered in evidence the heading in their book of accounts at the commencement of the account with the plaintiffs, which their bookkeeper testified she made from her knowledge in regard to the matter, and according to her instructions from the plaintiffs, when she made the first entry, and was as follows: "Lumber shipped R. B. Lang's mill for Marcy by Taplin & Rowell."  The entry was received subject to defendant's objection and exception.  It was admissible in connection with the testimony of the bookkeeper.  The plaintiff's account of the lumber which they claimed they sold the defendant through Lang was admissible, and this heading was part of it, and characterized it as showing in connection with the testimony, that they understood when the account commenced, and before any question had arisen, that they were selling their logs and lumber to the defendant, through Lang's agency.  Plaintiff Taplin testified, without objection, that some lien notes were taken by plaintiffs, covering the lumber.  He was then asked by his counsel what his purpose was in taking those lien notes, and answered subject to exception, that it was to hold the title of the logs until they got their pay, until they got down there, until they reached their destination.  He was further asked what his purpose was, in reference to whether the notes were taken in payment or settlement of this account, and answered subject to exception, that they did not take the lien notes on the lumber to settle the account.  An important question in the trial was whether Lang was acting as defendant's agent in the purchase of the logs and lumber, or whether the sales were made to him personally.  The plaintiffs claimed that Lang was defendant's agent in everything that was done, and

that they so understood from the beginning; that although the sales were for cash or lien notes as both parties conceded the lien notes-were taken in Lang's name, merely for the purpose of protecting their title and their interests until the lumber should all be paid for, there being an interim of a few days between the shipment and its arrival at the place of destination and the receipt of a check from the defendant. They also claimed, as being consistent with this position, that the taking of the lien notes was for no other purpose than retaining their title as security for the purchase price, and was in no sense payment of the account. The notes were never entered on their books. Defendant's evidence tended to show that he was acting under the written agreements; and he claimed that the fact of taking the lien notes in Lang's name showed that they were treated as payment of the account and that plaintiffs were dealing with him personally. Standing alone, it might have that tendency. But the transaction was subject to explanation. Its purpose might be shown. It comes within that class of cases in which oral testimony may be introduced to show the existing facts, and the purpose of the parties in executing notes or written contracts. The testimony was admissible for that purpose. *Labbee* v. *Johnson*, 66 Vt. 234, 28 Atl. 986; *Follett et al.* v. *Steele*, 16 Vt. 30.

It appeared that the defendant brought suit in trover against one Parker, a deputy sheriff, to recover for lumber sold by Parker upon two of the lien notes, given by Lang to plaintiffs, upon the ground that none of the lumber sold by Parker was included in the lien notes. The case was taken to the Supreme Court upon exceptions (78 Vt. 73, 62 S. E. 19). The defendant in that case was indemnified by Taplin & Rowell for taking the lumber and they assumed the defence of the case. The defendant in this case offered in evidence a part of the exceptions in that case, in which it was stated, in substance, that the uncontradicted evidence of the defendant in that case tended to show that Taplin & Rowell sold to Lang in 1903 a large amount of sawed lumber, and that it was all sold on condition that Lang was to give a lien note for it as soon as counted and before it was used and the title was not to pass until it was paid for, and defendant offered to show that attorneys for the plaintiffs then acting for them defending that suit wrote that paragraph in the exceptions. Plaintiffs objected to the admission of this

evidence. Defendant's counsel stated it was a declaration by the plaintiffs in this case. The court inquired of him as to what it was a declaration, but counsel made no answer, and the evidence was excluded, to which defendant excepted. Except for the statement that it was sold to Lang, this is the same state of facts conceded to exist by parties in this case. The lumber was to be paid for when counted, or lien notes given. Lien notes were in fact given by Lang. The question in this case was whether the sale was made to him personally, or as agent of the defendant, and whether he gave the lien notes in his own behalf, or for him. The transaction so far as the lien notes showed, was a sale to Lang, and the lien notes given by him for the lumber. In the case of Marcy against Parker these plaintiffs were attempting to protect their rights under the lien notes given by Lang. Their rights so far as that case was concerned, stood upon their sale to Lang, and taking the lien notes from him, and the identity of the lumber covered by the lien notes. That case resulted in a verdict for the plaintiff, the jury having found that none of the lumber so taken and sold by the defendant was specified in the two lien notes. In view of the questions litigated in that case, and the position which the defendant therein may have taken, and also, what took place in court at the time the testimony was offered, we think it was properly excluded. The defendant also offered in evidence, as a part of his case, a statement by counsel for defendant in that case, in a discussion before the court, which was excluded and which we consider inadmissible, in part for the reasons above stated, and in part because it was an argumentative statement by counsel based upon the facts appearing in that case.

A petition for a new trial was brought by the defendant in the same case, which contained a statement substantially like that in the exceptions as to what appeared on trial in regard to the sale of lumber and that it was to remain the property of Taplin & Rowell until paid for. This was offered in evidence by the defendant and properly excluded, for the reasons before given as to the other evidence offered.

At the close of all the evidence the defendant moved the court to direct a verdict for the defendant, upon the ground, first that the plaintiffs' declaration is in the common counts in assumpsit, and their uncontradicted evidence is that the contract between them and Lang was that they were to have cash or lien

notes for their logs and lumber as counted off, and were not to part with their title until they had received their full pay; that all the logs and lumber were sold and delivered according to that contract, and that they have received either cash or lien notes for the same, as agreed, and that the entire debt of plaintiffs is evidenced by and merged in said lien notes, and plaintiffs disclaim recovery upon the lien notes, and claim to recover only upon an alleged account which in fact never existed. And, secondly, that even if all the talk took place between the plaintiffs and Lang, as they claim, and even if in all the negotiations Lang was the authorized agent of the defendant having the power to bind the defendant in respect of the sale of the logs and lumber, still the lien notes executed by Lang for the very debt for which the defendant is now sued, being the purchase price of the logs and lumber, merged or took the place of all talk or negotiations between plaintiffs and Lang before their execution, and determine that the logs and lumber therein specified, were sold to Lang and not to the defendant. And in support of this last ground the defendant urged that it appears that plaintiffs have brought a suit in trover against the defendant, which is still pending, based upon the lien notes; that they placed the lien notes in the hands of an officer with instructions to realize upon the hardwood plank therein mentioned; that they defended the suit of this defendant against the officer, upon the theory that the two lien notes were valid notes against said Lang, and that they have endorsed all the money paid by Lang, on account of logs and lumber, upon said notes. This motion was overruled, to which the defendant excepted.

It is generally true that notes given by the debtor for the amount due from him on account, are *prima facie* payment of the account. In this case a litigated question is, who is the debtor; to whom was the lumber sold by the plaintiffs? Did they sell it to Lang individually, or to the defendant, through Lang as his agent? For the settlement of the matters of fact, involved in these questions, oral testimony was offered, and properly received. Although the sales were made by the plaintiffs to Lang, they claimed they were made to him as agent of the defendant, and although he gave lien notes and signed them with his own name, that these notes were given by him in behalf of the defendant for the sole purpose of preserving the rights of the plaintiffs, and retaining their title, until they should

actually receive the money for their property. Their testimony also tended to show that it was understood between them and Lang, that these notes were not given in payment for the lumber, but only as security for the purchase price, as appeared by their book account. These material facts were testified to by the plaintiffs and Lang, and were disputed by the defendant, only as to the main question involved, as to whether Lang was his agent in the transactions. Defendant had nothing to do personally with the purchase of lumber from the plaintiffs, all this was done by Lang. But much testimony was introduced by him, bearing upon the question of Lang's agency. The purpose for which the notes were given was in dispute. Both parties concede that plaintiffs were to have cash or lien notes for their lumber, when counted. There was necessarily a delay of a few days, between counting off, and reporting to the defendant and receiving a check from him. The plaintiffs' evidence tended to show that the lien notes were given to secure the plaintiffs during this interim. The method of bookkeeping adopted by the plaintiffs was to credit checks of defendant when received through Lang upon the account which they kept, of lumber sold. They also endorsed the same payments, upon the lien notes, but not until after the commencement of this suit. The endorsements upon the notes were not conclusive, but were evidence merely, and could be considered by the jury in connection with the other facts. The court could not hold, as matter of law, that the execution of the lien notes by Lang, was conclusive evidence that he was acting for himself, individually, and not for the defendant; nor that they were given in payment of the purchase price of the lumber, or in settlement of the account, nor that the account was merged in them, nor as to the weight to be given to the fact of their endorsement of payments upon the notes. All these matters were proper for the consideration of the jury under proper instructions from the court. The jury found that the notes were given as security. The motion for a verdict was properly overruled.

The defendant requested the court to charge the jury; first, that if they found that plaintiffs caused the two lien notes already mentioned, to be placed in the hands of an officer, with instructions to realize upon that part of the lumber therein specified, that act constituted an admission by them that they then understood and claimed that said two notes represented a

debt due from Lang to them, a part of which, at least, was then unpaid; and second, that such act constituted a declaration by them that they had sold to Lang and not to the defendant the lumber sought to be realized upon, and is direct evidence. that the fact is so; and third, that if. they found that plaintiffs defended the officer in the suit of defendant against him for selling lumber on the two lien notes, such defence constituted a declaration by them amounting to an admission, that said two notes represented a debt due to them from Lang, a part of which was the purchase price of the plank in question, and is direct evidence that said declaration is true. All these requests are based upon the theory that the mere giving of the notes by Lang constituted an indebtedness from him to plaintiffs, subject to no explanation of the purpose for which they were given, and that by the attempt of the plaintiffs to enforce their lien under them, they were either absolutely bound to that position, or at least must now be held to have admitted that to be the true position. These requests would require the court to instruct the jury in effect that this is so as matter of law, not that they should consider their subject matter as facts, with the other evidence in the case, and give it such weight as against the position now taken by the plaintiffs as they might see fit. They ignore the evidence already in the case as to the agency of Lang, and the purpose for which the notes were given, and the claim of the plaintiffs that they were given only as security, and for holding their title until they should receive their pay. They ask the court to rule that the taking of the notes and enforcement of their lien under them was an admission or declaration by the plaintiffs that they were taken as representing a debt, from Lang, and that they had sold the lumber to him, and not to the defendant, and was direct evidence that such declaration was true. This was asking the court to dictate to the jury as to the evidentiary force and effect they should give certain evidence. It would take from them the right to give it as much or as little weight as it deserved to have, and the right to say, whether, in the light of the testimony and circumstances it ought to have any weight at all, as an admission. If they believed the plaintiffs' evidence, and considered their claims reasonable, they might not view their transactions in regard to the notes as an admission on their part, but as entirely consistent with the

theory of a sale to the defendant, through Lang as his agent. The requests were therefore properly refused.

The defendant also requested the court to charge in substance, that the fact that the plaintiffs caused the payments toward the lumber to be indorsed on the lien notes, as of the dates when the payments were made is evidence tending to show that plaintiffs had not before said indorsements were made, made any other application of said payments; also that the making such indorsements tended to show that plaintiffs understood said payments were not made on account; also that the making of such indorsements is an admission that the payments were not made on account. It appeared that the payments were credited in the account when received, and were indorsed on the notes, after the commencement of this suit as of the date when received. The evidence as to this was uncontradicted, unless by the circumstances of the date of indorsement appearing on the notes, being different from the date when actually made. Here again, the jury, if these requests had been complied with, would have been obliged to disregard the plaintiffs' theory, and evidence, in respect of the note transaction.

The method which the plaintiffs claim was adopted to keep their lien good upon the property, required the giving of lien notes, not as evidence of the debt, but as being necessary to preserve their security. No question was made as to the correctness of the items as credited and indorsed by plaintiffs, nor that there was but one payment of each item credited. If the jury found the plaintiffs' claim well founded they might say that the credits upon the account and the indorsements upon the notes were consistent with their claim, the indorsements being made for the purpose of having the notes show the amount due, if the lien should be enforced. The amount due would have to be shown in some way, and the indorsements would enable them to compute the balance. Keeping account of these payments in these two ways, and as they claim for the reasons stated, the court could not tell the jury as matter of law, that the mere fact of indorsement upon the notes would tend to show that plaintiffs had not before credited the same amounts in the account, especially as the exceptions state it appeared they were credited when received; nor that such indorsement would tend to show that they understood said payments were

not made on account, or would constitute an admission that they were not so made.

The way the account was kept, the giving of the notes and why they were given, the credits and indorsements and their dates were all matters of evidence and before the jury, and they had the right to consider all the facts and circumstances, in arriving at a conclusion, in regard to the payments, and where they should apply, and where they did apply, and the force and effect of their application, if any, as against the plaintiffs. All this bears upon the giving of the notes, and the purpose of their execution, and the court could not be required to select one piece of evidence and give it prominence in the manner indicated by the requests and disregard all other testimony on that subject. All the transactions and the conduct of the parties in relation to them, were before the jury, and were proper subjects of consideration by them.

The defendant also requested the court to charge the jury, that although the contract in respect of the logs and lumber was made with Lang as agent of the defendant, yet if that contract was that the sale was to be a cash transaction, and that lien notes were to be given for the lumber or logs not paid for on delivery at the Lang mill, and that plaintiffs were to retain the property in the logs and lumber till paid for, and the business was transacted in accordance with this contract, then the plaintiffs cannot recover for the logs and lumber in this suit; and also excepted to the failure of the court to instruct the jury as to the defendant's claim that there was nothing to pay, on his theory, nothing due which was proper matter of book account. This request assumes that the contract was made with Lang as agent; that the sale was for cash and lien notes to be given for what was not paid for on delivery, plaintiffs to retain title until paid for.

The method adopted between the plaintiffs and Lang, for retaining title by the plaintiffs, was by Lang's giving lien notes to hold what was not paid for. Although it was called a cash sale, there was a condition that lien notes should be given for what had not been paid for. If the defendant got possession of lumber which his agent Lang had purchased, but was not paid for, by either, he would be liable to plaintiffs for the balance due for it. Again recurring to the theory and evidence of the plaintiffs, if the jury should find the plaintiffs' claim correct, then the plaintiffs properly charged all lumber to defendant and credited

all payments received, and took the lien notes executed by his agent for the sole purpose of security. Retaining their property in the logs means in this transaction, for security. The defendant's counsel in his brief says of course the lien notes were not given in payment of the logs and lumber. If they were given in payment, the title to the logs and lumber passed from Taplin & Rowell. The lien notes were given by Lang and accepted by Taplin & Rowell only as security. For all other purposes it was an absolute sale. The defendant cannot well refuse to pay for lumber which was permitted by plaintiffs to go into his possession before being paid for on the ground that it was a contract for payment in cash on delivery, that he did not pay for it on delivery and therefore is not liable to pay for it, although lien notes were to be given for such part as was not paid for in cash, still if they were given only as security, they were not payment. Such part of the lumber as was not paid for on delivery, was proper matter of charge on book and can be recovered for in general assumpsit. This request as stated, was properly refused.

Several letters written by the defendant to Lang were introduced in evidence by the plaintiffs, and among them one dated January 24, 1903, reading as follows: ''Replying to your favor of the 19th inst. which arrived during my absence from home will say that we do not care to advance money on logs until they are delivered and you can certify to the number of feet there are of them. This is the only way to do business and know what we are doing, must have some system to our business or we shall not know where we are.'' And the other dated January 27, 1903, reading: ''Replying to your favor of the 26th inst. will say that we do not care to pay for logs until they have arrived at the mill-yard. When they are delivered at the mill and scaled so that you know how many feet you have you can send me a schedule of the number of feet of each kind and the amount per thousand that you are to pay and we will then attend to sending you a check to pay for them. As for advancing money on logs before they arrive at the mill-yard and are scaled so that we know what we are paying for, we do not care to do it, and if the parties that you buy of cannot wait until the logs are delivered and scaled it is better not to buy of them. We are not going to advance money haphazard and shall insist upon the

business being done as we desire.'' The court charged the jury as follows as to these letters:

''I instruct you that a fair construction and legal construction of those two letters is that so far as logs were concerned which Lang was authorized to buy on Marcy's credit, to the extent, at least, of having those logs delivered in that mill-yard, scaled, and the measure or scale sent to Mr. Marcy in Palmer, and time for him to get a check back, etc., that would not be a cash sale. It would, to a certain extent, be a sale on credit.'' The defendant excepted to this part of the charge, on the ground that the submission to the jury of the question whether the defendant authorized Lang to purchase logs on his credit was upon those two letters alone, disregarding all the other evidence including conversations and correspondence between Lang and the parties, the manner of carrying on the business and all the circumstances, and that even if the construction of the letters may have been for the court, they should have been submitted to the jury, with the construction given them by the court together with all the other evidence in the case. There was considerable correspondence between the defendant and Lang, and several other letters from the defendant relating to the business appear in the exceptions. The case shows that defendant claimed that his relation to Lang was only that of a commission merchant selling the product of Lang's mill, and taking security for advancements and commissions, and that he never authorized Lang to pledge his credit for logs and lumber, and that his evidence tended to show this; and he claimed that no evidence in the case tended to show that he had authorized Lang to pledge his credit for the purchase of either logs or lumber, and that the most that any evidence in the case tended to show, was that Lang was his agent no further than to make cash purchases of logs or lumber, and that he kept his account with Lang and rendered him statements from time to time showing that this was the way he understood the relations between them. Thus the two parties differed widely in their claims and in their evidence as to this particular question. The two letters related entirely to logs. In both, the defendant specifically objected to advancing money for logs, and in the first he stated when he would pay for them, that is, as soon as he knew the amount. The understanding was that the title to the logs should remain in the vendor until paid for. The plaintiffs' testimony was,

they were to have cash or lien notes when delivered. By delivery at the mill-yard plaintiffs did not lose their property in the logs, nor the defendant acquire it. By such delivery the logs were where it was agreed they should be, and were the property of the defendant, as soon as paid for, if Lang bought them as his agent. Having been delivered there, if defendant should fail to pay, as soon as notified of the amount, the plaintiffs would have the right to bring suit against him, if they were bought by Lang as his agent, or to assert their rights under the lien notes.. Whether Lang was authorized to buy logs on Marcy's credit was a matter of importance, and upon which considerable testimony was offered on both sides, and it was closely contested. The plaintiffs claimed that Lang had the right to pledge the defendant's credit for logs delivered in the mill-yard, until the pay could be received from defendant; and while the defendant's version of his relations with Lang did not, in many respects, differ materially from that given by Lang and the plaintiffs as to the arrangement actually made, he strongly insisted that Lang had no authority to pledge his credit to the plaintiffs. His claim amounted to saying that Lang had exceeded his authority in the purchases made by him. He consented to pay $526.48 as the balance he understood from Lang was due the plaintiffs, but when he was informed it was $1,540 he declined to pay that amount. Whether Lang had exceeded his authority in this respect or not must of course, and did, depend upon the facts and circumstances shown in the case. He evidently had exceeded his authority in some respects, for he had used the money of the defendant to such an extent that he conveyed all his property to him to make good the deficiency. Not only did this depend upon all the correspondence, but upon the course of business between the defendant and Lang, from the beginning, including their deal under the written contracts, and any oral agreements or understanding between them, if any, altering or modifying these contracts, the manner of conducting business between Lang and plaintiffs and knowledge and acquiescence of the defendant therein, the time of delivery of lumber, the length of time that must elapse, after delivery before the cash or checks could be received, and any circumstances relating to the matter. The court by the instructions given took the question from the jury, and left nothing for them to decide, as to the question of credit for logs purchased. Among the eleven

special questions submitted to the jury there was none as to this. There was a question submitted as to Lang's authority to purchase lumber on the credit of the defendant. The defendant excepted to the failure of the court to submit a question as to whether Lang had authority to pledge the credit of the defendant in the purchase of logs, both at the time the court announced what special verdicts would be submitted, and after the charge was given. But the court treated that as a matter of law, and gave its construction of the two letters, and made no allusion to the other evidence in the case, nor submitted the letters to the jury with its construction for their consideration and judgment, in connection with the other evidence. The letters were treated as being conclusive on that point. Even if they were susceptible to the construction given them by the court, they should have been submitted to the jury, with the construction given them by the court, as a piece of evidence, together with all the other evidence and circumstances in the case.

In *White* v. *Lumiere et al.*, 79 Vt. 206, 64 Atl. 1121, 6 L. R. A. 807, it was said that, "while it is true that generally the construction of written instruments is a question for the court, it is likewise true that where the case turns upon the proper conclusions to be drawn from a series of letters taken in connection with other facts and circumstances, it is one which may properly be referred to a jury." This was according to the law as laid down in *Rankin* v. *Fidelity Insurance Co.*, 189 U. S. 242, 23 Sup. Ct. 553, 47 L. Ed. 792, and in *West* v. *Smith*, 101 U. S. 263, 25 L. Ed. 809. As the ultimate fact to be determined was the authority of Lang to pledge the defendant's credit for logs, the defendant under the circumstances had the right to have the jury consider all the evidence bearing on that subject. The general rule undoubtedly is, that the construction of all written documents is a question of law for the court, and when a contract is sought to be made out from such documents alone, it is for the court to ascertain and determine its construction whether the documents are many or few. But where the evidence in the case does not depend altogether upon written instruments, but upon other matters of fact, it is a question for the jury to determine what was the contract between the parties. *Roberts & Co.* v. *Bonaparte*, 73 Md. 191, 20 Atl. 918, 10 L. R. A. 689; *Bolchow* v. *Seymour*, 17 Com. Bench U. S. 107; *Moore* v.

*Garwood,* 4 Excheq. 681; *Foster* v. *Mentor Life Association Co.,* 3 Ellis & Black 78.

In Taylor on Evidence, Sec. 36, it is said, "where a contract has to be made out partly by letters and partly by parol evidence the jury must deal with the whole question." In 1 Story on Contracts, Sec. 818, "if a contract is to be made out partly by written documents and partly by oral evidence the whole becomes a question for the jury."

The defendant also excepted to that part of the charge in respect to the sixth special verdict, which was, "was Lang authorized to purchase lumber on Marcy's credit?" The court said, "That depends upon whether you find by a fair balance of the evidence that Lang was authorized to buy lumber as Marcy's agent, the same as logs. If you say that he was authorized by Marcy to buy lumber for him the same as he was to buy logs, then this follows the same as it does with logs. In other words he had a right to buy it on the same credit with Marcy as far as length of time was concerned, because otherwise it would not be buying the same as logs. So you will answer that question yes or no, as you find it." The authority as to the purchase of lumber, if any was given, was by parol not being mentioned in the letters. The instructions assume that the authority to purchase logs on credit was given by these two letters, alone, and then place the purchase of lumber on credit, on the same basis. Of course if the charge was erroneous in respect of logs, the same is true as to lumber for it is placed on the same ground, and makes their finding depend upon Lang's authority to buy logs. The charge does not clearly discriminate between logs and lumber. Other exceptions were taken which we do not deem it necessary to consider, as the same questions are not likely to arise in another trial.

*Judgment reversed and cause remanded.*